VERA E. CARTER-SHIELDS, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. ALTON HEALTH INSTITUTE, Defendant and Counterplaintiff-Appellee and Cross-Appellant (Community Primary Care Physicians, Intervening Defendant and Counterplaintiff-Appellee and Cross-Appellant).

Fifth District    No. 5—99—0359

Opinion filed November 3, 2000.—Rehearing denied December 6, 2000.

Christopher B. Hunter, of Farrell, Hunter, Hamilton & Julian, P.C., of Godfrey, for appellant.

Clarence W. Harrison II, of Morris B. Chapman & Associates, Ltd., of Granite City, and Roger K. Heidenreich and Stephen J. O'Brien, both of Sonnenschein, Nath & Rosenthal, of St. Louis, Missouri, for appellees.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Vera E. Carter-Shields, M.D. (plaintiff), filed a declaratory judgment action against Alton Health Institute (AHI), seeking to have her employment contract, referred to by the parties as a physician service agreement (agreement), with AHI declared invalid. After AHI allegedly assigned all of its physician service agreements, including plaintiff's agreement, to Community Primary Care Physicians (CPCP), that entity intervened and is also a defendant herein. AHI and CPCP (defendants) filed a counterclaim for breach of the agreement, seeking injunctive relief and monetary damages. The trial court denied plaintiff's request for declaratory relief, granted a partial summary judgment in favor of defendants on the issues of breach of contract and injunctive relief, and enjoined plaintiff from practicing medicine for a period of two years within 20 miles of AHI's office, pursuant to a restrictive covenant contained in the agreement. Thereafter, on the motion of plaintiff, the trial court modified its partial summary judgment order, interpreting the 20-mile radius described in the restrictive covenant as driving distance instead of a straight line on the map. Plaintiff appeals the trial court's entry of the partial summary judgment, arguing as follows: (1) the agreement is void and unenforceable, (2) AHI has no legal and protectable interest in preventing plaintiff from engaging in the private practice of medicine, (3) the agreement between AHI and plaintiff was unassignable, (4) the trial court erred in finding the restrictive covenant valid and enforceable, (5) the trial court erred in granting defendants' motion for a partial summary judgment on the factual issue of breach of contract, and (6) the enforcement of the restrictive covenant prevents plaintiff from fulfilling her ethical and professional obligations to her patients and is, therefore, void as a matter of public policy. Defendants cross-appeal based on the court's modifications of the restrictive covenant. We reverse.

## FACTS

Plaintiff is a board-certified family-practice physician licensed to practice medicine in Illinois. Plaintiff graduated from Tulane School of Medicine in New Orleans, Louisiana, in 1982, and she completed her

internship and residency with the Army. Plaintiff continued to practice medicine with the Army until March 1995. AHI is a not-for-profit corporation organized and existing under the Illinois General Not for Profit Corporation Act of 1986 (805 ILCS 105/101.01 *et seq.* (West 1996)). St. Anthony's Health Systems, a not-for-profit, tax-exempt corporation wholly owned by the Sisters of St. Francis of the Martyr St. George, owns 50% of AHI stock. The other 50% is owned by Alton Health Care Partnership (Partnership). The Partnership is an entity of physician groups, mainly, but it also includes a nonphysician (a physical therapist). The Partnership does not have tax-exempt status. The president of AHI is William Kessler. Mr. Kessler is also the president of St. Anthony's Health Systems. Mr. Kessler is not a physician, nor does he hold a medical license.

On January 4, 1995, plaintiff and AHI entered into the agreement in question, which became effective April 1, 1995, the first day plaintiff worked for AHI. Under the contract, plaintiff was compensated at an annual rate of $127,000 in 1995. In 1996, plaintiff's compensation was adjusted to $127,000 plus the percentage increase in the consumer price index. In 1997, and thereafter, plaintiff's compensation was to be decided by a compensation committee. Committee members were to consider numerous factors in making a determination, including compensation in previous years, market compensation levels, AHI's performance, and the status of health care reform. Bonuses were also available to plaintiff throughout the term of her contract. AHI was to provide plaintiff with, *inter alia*, office space, equipment, furnishings, supplies, and personnel, both medical and nonmedical, to operate the office.

The agreement was for an initial term of three years and was automatically renewable, unless otherwise terminated. The agreement gave AHI the right to terminate for cause upon the occurrence of certain events outlined in the agreement and gave both parties the right to terminate, with notice, for a failure of the other party to cure a material breach. The agreement also included the following two-year, 20-mile radius, noncompetition provision:

> "5.2 *Non-Competition Covenant.* During the term of this Agreement and for a period of two (2) years from the date this Agreement is terminated for any reason (the 'Protected Period'), Physician agrees that he or she will not, without the prior written consent of [AHI], directly or indirectly (i) provide[ ] or become associated with any other hospital group or other entity of any type engaged in the provision of medical or health care services or related administrative services within the medical practice area, which for purposes of this Agreement is the area within a twenty

(20) mile radius of the Office; (ii) solicit, divert, take away, interfere with, or contract to provide or render medical services to patients treated by Physician during the term of this Agreement; or (ii) [sic] solicit any person who is now or is hereafter an employee of [AHI] or is now or hereafter engaged as an independent contractor of [AHI] to become an employee or to be engaged as an independent contractor of a hospital medical group or any other entity that is competitive with [AHI] (collectively the 'Non-Competition Covenant')." (Emphasis omitted.)

Plaintiff's relationship with AHI was strained almost from the outset. For example, on October 6, 1995, plaintiff sent the president of AHI a five-page letter detailing her complaints about working conditions with AHI and problems that had arisen from the time she signed the agreement. On July 15, 1996, plaintiff's attorney wrote a letter to the attorney for AHI in an attempt to work out a separation agreement and to modify the noncompetition clause to describe an area "exceedingly close" to plaintiff's AHI office. The issues were never resolved to the parties' satisfaction.

On January 1, 1997, AHI assigned all of its physician service agreements, including the instant agreement, to the other defendant herein, CPCP, an Illinois medical services corporation organized as a limited partnership. CPCP is owned by George L. Tucker, a licensed medical doctor. Plaintiff did not sign a new contract with CPCP, but she continued to work under the original agreement between plaintiff and AHI. On January 31, 1997, plaintiff initiated litigation by filing a declaratory judgment action against AHI, seeking to have the agreement declared invalid. The litigation was not actively pursued while the parties waited for our supreme court's decision in *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 688 N.E.2d 106 (1997), which considered whether the corporate-practice-of-medicine doctrine prohibits a hospital from employing physicians to provide medical services.

On April 3, 1997, plaintiff's attorney sent a letter to Mr. Kessler and the board of directors of AHI with the express purpose of providing notice of plaintiff's intent to terminate the agreement for alleged ongoing material breaches. The agreement allowed either party to terminate the agreement if the other party failed to cure a material breach, but only if notice was given in the following manner:

"6.3 *Termination Upon Failure to Cure a Material Breach.* Either party may terminate this Agreement upon ten (10) days' prior written notice to the other upon the breaching party's failure to cure a breach of a material provision of this Agreement *** within thirty (30) days following receipt of written notice of such breach from the non[ ]breaching party ***." (Emphasis omitted.)

In a letter dated April 17, 1997, the attorney for defendants responded to plaintiff's attorney's letter. The reply letter explained that plaintiff's intention to terminate the agreement was not communicated in the manner provided for in the contract and that the April 3, 1997, letter, therefore, constituted an anticipatory breach of the agreement. The letter went on to state that if plaintiff took any actions consistent with prematurely terminating the agreement, CPCP intended to pursue all its remedies under the agreement, including the covenant not to compete. Throughout the remainder of 1997, the parties attempted to resolve the issues between them.

Plaintiff continued to work under the agreement until January 15, 1998, when she sent a letter to Mr. Kessler. The letter stated, "I am terminating any relationship I may have with [AHI or CPCP] effective the close of business today." Shortly thereafter, plaintiff set up a new practice in Alton, but she later moved to Godfrey, both of which are within the noncompetition area set forth in the agreement. In response, on February 2, 1998, AHI filed an amended counterclaim for injunctive relief, seeking to enforce the restrictive covenant. The record does not reflect an order allowing CPCP to intervene in the suit, but it is clear that CPCP was allowed to participate in the lower court's proceedings and was referred to by the trial court as an "intervenor."

On December 14, 1998, the trial court resolved plaintiff's original claim for declaratory relief when it issued an order finding that the agreement was valid and enforceable. Plaintiff filed a motion to certify for interlocutory appeal the issue of whether the agreement was a valid contract. The trial court denied plaintiff's motion to certify. Defendants moved for a partial summary judgment on their counterclaim for injunctive relief and for a summary judgment on plaintiff's claims for injunctive relief. Memorandums in support thereof were also filed.

On April 28, 1999, the trial court granted defendants' motion for a partial summary judgment, finding that defendants were entitled to a summary judgment on the issue of breaches of the agreement. The trial court found that defendants had a valid, protectable interest in enforcing the noncompetition clause, and the court enjoined plaintiff from practicing medicine within a 20-mile radius of the offices of AHI. Plaintiff filed an emergency motion for stay and a motion to reconsider. The trial court modified its original order by giving plaintiff additional time to make arrangements for the patients she was treating and to give her time to move her equipment. The trial court also modified its interpretation of the noncompetition clause to reflect driving distance instead of a straight line on a map. Plaintiff filed a timely notice of appeal, and defendants filed a cross-appeal based on the trial court's modification of the noncompetition clause.

## ANALYSIS

### I

The first issue we are asked to consider is whether the agreement is valid and enforceable. Plaintiff contends that because AHI does not and cannot obtain a license to practice medicine, it had no legal authority to enter into the agreement with plaintiff and that, therefore, AHI is a corporation practicing medicine in violation of the Medical Practice Act of 1987 (Act) (225 ILCS 60/1 *et seq.* (West 1996)) and the corporate-practice-of-medicine doctrine. Plaintiff argues that *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 688 N.E.2d 106 (1997), is inapplicable to the instant case because it created an exception to the corporate-practice-of-medicine doctrine *only* for licensed hospitals, not entities such as AHI. Defendants, on the other hand, reply that AHI, a not-for-profit health care institute, fits squarely within the rationale of *Berlin* and that the trial court did not err in holding that the agreement was valid and enforceable.

In *Berlin*, our supreme court addressed the issue of whether the corporate-practice-of-medicine doctrine prohibits a licensed hospital from employing physicians to provide medical services. In that case, a physician filed a complaint for declaratory judgment in which he sought to have his employment agreement, which included a restrictive covenant, declared void. The employer was the Health Center, a nonprofit corporation duly licensed under the Hospital Licensing Act (210 ILCS 85/1 *et seq.* (West 1994)). The restrictive covenant covered a 50-mile radius for a period of two years following the physician's departure from the Health Center. The physician argued that the agreement was void because, by employing physicians, the hospital was violating the corporate-practice-of-medicine doctrine. See *Berlin*, 179 Ill. 2d at 9, 688 N.E.2d at 110. The hospital, on the other hand, argued that there was no statutory prohibition on the corporate employment of physicians, that no judicial determination existed that prohibited hospitals from employing physicians, and that public policies behind such a prohibition are inapplicable to licensed hospitals, particularly nonprofit hospitals. See *Berlin*, 179 Ill. 2d at 8-9, 688 N.E.2d at 109.

The *Berlin* court reviewed the history of the corporate-practice-of-medicine doctrine and the application of the doctrine in Illinois. *Berlin*, 179 Ill. 2d at 10-13, 688 N.E.2d at 110-11. The review included an analysis of *People ex rel. Kerner v. United Medical Service, Inc.*, 362 Ill. 442, 200 N.E. 157 (1936), which held that a low-cost health clinic in which all medical services were rendered by duly licensed physicians was illegally engaged in the practice of medicine in violation of the

Medical Practice Act (Ill. Rev. Stat. 1935, ch. 91, par. 1 *et seq.* (now 225 ILCS 60/1 *et seq.* (West 1998)). The *Berlin* court went on to discuss the applicability of the doctrine to hospitals in other jurisdictions, explaining that some states have declined to adopt the corporate-practice-of-medicine doctrine, some have determined that the doctrine is inapplicable to nonprofit hospitals and health associations, and some have decided that the doctrine is not applicable to hospitals that employ physicians because hospitals are authorized by other laws to provide medical treatment to patients. *Berlin*, 179 Ill. 2d at 13-15, 688 N.E.2d at 111-12. The *Berlin* court found the rationale of the latter two approaches persuasive and declined to apply the corporate-practice-of-medicine doctrine to licensed hospitals:

> "The corporate practice of medicine doctrine set forth in *Kerner* was not an interpretation of the plain language of the Medical Practice Act. The Medical Practice Act contains no express prohibition on the corporate employment of physicians. Rather, the corporate practice of medicine doctrine was inferred from the general policies behind the Medical Practice Act. See *Kerner*, 362 Ill. at 454. Such a prohibition is entirely appropriate to a general corporation possessing no licensed authority to offer medical services to the public, such as the appellant in *Kerner*. However, when a corporation has been sanctioned by the laws of this state to operate a hospital, such a prohibition is inapplicable." *Berlin*, 179 Ill. 2d at 16, 688 N.E.2d at 112-13.

The *Berlin* court also found that the public-policy concerns that supported the doctrine were inapplicable to a licensed hospital in the modern health care industry. See *Berlin*, 179 Ill. 2d at 16, 688 N.E.2d at 113-14.

Justice Harrison wrote a dissent in which he expressed his opinion that the corporate-practice-of-medicine doctrine prohibits licensed hospitals from entering into employment agreements with physicians. Justice Harrison pointed out: "More than 60 years have passed since *Kerner* was decided. If the legislature believed that our construction of the [Medical Practice] Act was erroneous or that the rule announced in *Kerner* should be changed, it could have amended the law to authorize the practice of medicine by entities other than individuals." *Berlin*, 179 Ill. 2d at 20, 688 N.E.2d at 114 (Harrison, J., dissenting). Since our General Assembly has continued to adhere to the requirements of the Act, acquiesced in the supreme court's judicial construction of the Act, and failed to alter the prohibition against the corporate practice of medicine by hospitals in any manner, Justice Harrison concluded that the corporate practice of medicine by hospitals is prohibited. See *Berlin*, 179 Ill. 2d at 21, 688 N.E.2d at 114-16 (Harrison, J., dissenting).

Contrary to defendants' assertions, the instant case is not squarely on point with *Berlin*, as the holding in *Berlin* is narrow. It held that a *licensed hospital* may enter into contracts with physicians. AHI is not a licensed hospital. It is a health care institute organized and existing under the Illinois General Not For Profit Corporation Act, but it does not have tax-exempt status. While 50% of AHI is owned by St. Anthony's Health Systems, which is a not-for-profit, tax-exempt corporation, the other 50% is owned by the Partnership, which consists of a series of corporations. Most of the Partnership is physician-owned, but at least one owner is not a physician. The president of AHI is a nonphysician, Mr. Kessler. The record here indicates that Mr. Kessler and plaintiff were at odds almost from the beginning of plaintiff's and AHI's employment relationship, and it demonstrates the pitfalls of corporations practicing medicine.

In large part, the public-policy prohibition against the corporate practice of medicine stems from concerns about lay control over professional judgment. Most patients would agree that a physician's loyalty should be to his or her patient and not to an employer concerned about cost control and business decisions.

> "To practice a profession requires something more than the financial ability to hire competent persons to do the actual work. It can be done only by a duly qualified human being, and to qualify something more than mere knowledge or skill is essential. The qualifications include personal characteristics, such as honesty, guided by an upright conscience and a sense of loyalty to clients or patients, even to the extent of sacrificing pecuniary profit, if necessary. These requirements are spoken of generically as that good moral character which is a pre-requisite to the licensing of any professional man." *Dr. Allison, Dentist, Inc. v. Allison*, 360 Ill. 638, 641-42, 196 N.E. 799, 800 (1935).

Those words, spoken 65 years ago, are no less true today.

However, we are mindful of the fact that the days of the sole medical provider, with few expenses, few office personnel, and little equipment, are somewhat a thing of the past. Today, most physicians employ billing and insurance specialists, nurses, administrative assistants, and medical technicians. We are also mindful of the numerous regulations that all health care providers must follow. Nevertheless, the public-policy arguments that support the corporate-practice-of-medicine doctrine are exhibited in this case. Plaintiff complained repeatedly about the lay persons who were directing her practice and interfering with the treatment of her patients. We are unconvinced by defendants' arguments that the corporate-practice-of-medicine doctrine does not apply to AHI. *Berlin* was limited to only licensed

hospitals, and we decline to extend the holding in *Berlin* to AHI or any similar health care provider. Accordingly, we find that the contract between plaintiff and AHI was void. Therefore, the contract, including the noncompetition provision, is not only void and unenforceable but also unassignable.

## II

Assuming *arguendo* that *Berlin* applies to the facts in the instant case, we are compelled to address plaintiff's arguments concerning the restrictive covenant contained in the agreement. The agreement contained a provision, set out in full in the fact portion of this opinion, prohibiting plaintiff from practicing medicine for two years within 20 miles of AHI's office where plaintiff was employed, should the agreement be terminated for any reason. The agreement did not provide for liquidated damages. The trial court found the restrictive covenant to be enforceable, but it did modify the 20-mile restriction to reflect driving distance rather than a straight line on a map.

■ First, it is important to note that, in general, covenants not to compete are not looked upon with favor by the law because they operate at least as partial restraints of trade. Such covenants are scrutinized carefully by the courts. See *Hydroaire, Inc. v. Sager*, 98 Ill. App. 3d 758, 424 N.E.2d 719 (1981). A covenant not to compete will not be enforced unless there is a legitimate business interest to be protected by such an agreement and the time and territorial limitations are reasonable. The law will not enforce a contract merely to prohibit ordinary competition. See *Reinhardt Printing Co. v. Feld*, 142 Ill. App. 3d 9, 15, 490 N.E.2d 1302, 1307 (1986). Two general situations exist in which an employer's proprietary interest in his customers warrant the enforcement of a covenant not to compete: (1) where, by the nature of the business, an employer has a near-permanent relationship with its customers and but for the employee's employment, he or she would not have contact with the customer or (2) where the former employee learned trade secrets or acquired other confidential information while employed and subsequently tried to use that information for his or her own benefit. See *Southern Illinois Medical Business Associates v. Camillo*, 190 Ill. App. 3d 664, 673, 546 N.E.2d 1059, 1065 (1989).

■ In the instant case, plaintiff was a family-practice physician who spent the previous 12 years in the Army engaged in the practice of medicine. The record reflects that plaintiff basically started a new business for AHI in 1995. She was given office space, a few employees, and some equipment. This is not a case where a physician with an established practice takes on a newcomer and the newcomer usurps

the clientele. There is no showing that AHI had a near-permanent relationship with any of plaintiff's patients. Instead, because of the nature of a patient-physician relationship, it is more likely that the patients would establish a near-permanent relationship with the physician, rather than a health care entity such as AHI.

"While clientele may properly be called the customers of a particular business, they cannot be considered the 'property' of that business. While a business can have a proprietary interest in lists of customers which it maintains, no business has a proprietary interest in the customers themselves." *Murphy v. Murphy*, 28 Ill. App. 3d 475, 478, 328 N.E.2d 642, 644 (1975).

Moreover, it is clear from the record that plaintiff did not learn any trade secrets or gain confidential information as the result of her employment with AHI. By the time plaintiff joined AHI, she had already received her training and developed skills while working as a physician for the Army. Plaintiff did not learn any procedures from AHI that were not readily available to other family practitioners. There is no doubt that AHI hired plaintiff and agreed to pay her $127,000 per year because she already possessed the skill and the knowledge necessary to treat patients. The agreement did not provide for liquidated damages, but it completely restricted plaintiff from practicing medicine within a 20-mile radius of the AHI office where plaintiff was employed. We believe that the covenant in question restricts competition rather than protects any legitimate business interest of AHI or CPCP. See *Camillo*, 190 Ill. App. 3d at 675-76, 546 N.E.2d at 1067.

Second, we point out that the American Medical Association disfavors the use of any restrictive employment or partnership agreements among physicians:

"AGREEMENTS RESTRICTING THE PRACTICE OF MEDICINE. The counsel on Ethical and Judicial Affairs discourages any agreement between physicians which restricts the right of a physician to practice medicine for a specified period of time or in a specified area upon termination of employment or a partnership or a corporate agreement. Such restrictive agreements are not in the public interest." Opinions of the Council on Ethical & Judicial Affairs of the American Medical Ass'n, § 9.2 (1986).

The foundation for section 9.2 rests on considerations of public policy. Plaintiff relies on these public-policy considerations in asking us to hold the restrictive covenant void. Plaintiff directs our attention to the public-policy considerations expressed in *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 693 N.E.2d 358 (1998), and asks us to apply the rationale in *Dowd* to the instant case.

In *Dowd*, our supreme court held a covenant not to compete between a law firm and two departing attorneys unenforceable. The provision in that case sought to prohibit departing attorneys from soliciting clients from the law firm for a period of two years following the termination of the employment agreement. See *Dowd*, 181 Ill. 2d at 480, 693 N.E.2d at 369. The *Dowd* court relied on Rule 5.6 of the Rules of Professional Conduct (134 Ill. 2d R. 5.6) in finding the noncompetition provision void and unenforceable. Rule 5.6 provides that a lawyer shall not participate in offering or making an employment agreement that restricts the rights of a lawyer to practice after the termination of the employment relationship. Our supreme court stated:

> "[W]e believe that enforcement of the provisions at issue would violate the important considerations of public policy that underlie the prohibition found in Rule 5.6. The rule is designed both to afford clients greater freedom in choosing counsel and to protect lawyers from onerous conditions that would unduly limit their mobility. [Citation.] Consistent with that rationale, we conclude that the noncompetition covenants in the employment agreements conflict with Rule 5.6 and may not be enforced." *Dowd*, 181 Ill. 2d at 481, 693 N.E.2d at 369.

Likewise, we believe that section 9.2 invalidates the noncompetition provisions of the instant agreement.

Section 9.2 and Rule 5.6 are similar in scope. Rule 5.6 prohibits a lawyer from making an agreement that restricts the rights of a lawyer to practice after the termination of an employment relationship, and section 9.2 condemns noncompetition agreements such as the one involved in the instant case. The same public-policy arguments that prohibit lawyers from making such contracts are applicable to physicians. An agreement restricting the right of partners or associates to practice after leaving a firm limits not only their professional autonomy but also the freedom of clients to choose a lawyer. Similarly, an agreement restricting the right of a physician to practice medicine after leaving a health care provider such as AHI limits not only the physician's professional autonomy but also the patients' freedom to choose a doctor. The 20-mile restriction, even with the modification added by the trial court, would deprive at least some patients of an ongoing relationship with the physician of their choice. See *Duffner v. Alberty*, 19 Ark. App. 137, 718 S.W.2d 111 (1986); *contra Karlin v. Weinberg*, 77 N.J. 408, 390 A.2d 1161 (1978).

> "Free choice of physicians is the right of every individual. One may select and change, at will, one's physicians, or may choose a medical care plan such as that provided by a closed panel or group

practice or health maintenance organization. The individual's freedom to select a preferred system of health care and free competition among physicians and alternative systems of care are prerequisites of ethical practice and optimal patient care." M. Sullivan, *Covenants Not To Compete & Liquidated Damages Clauses: Diagnosis & Treatment for Physicians*, 46 S.C. L. Rev. 505, 514 (1995), citing Opinions of the Council on Ethical & Judicial Affairs of the American Medical Ass'n, § 9.06 (1982). We find that the restrictive covenant in the instant case is an unreasonable restraint of trade and is unenforceable on public-policy grounds.

Defendants rely on *Gillespie v. Carbondale & Marion Eye Centers, Ltd.*, 251 Ill. App. 3d 625, 622 N.E.2d 1267 (1993), to support their contention that defendants have a protectable interest in enforcing the restrictive covenant. *Gillespie* upheld a restrictive covenant contained in an employment agreement between a departing ophthalmologist and an eye clinic, prohibiting the ophthalmologist from practicing within a 50-mile radius of the eye clinic's branches at which he previously practiced. The *Gillespie* court found, "[R]estrictive covenants between medical doctors are not detrimental to the public interest because the restricted doctor can be just as useful to the public in another location outside the restricted area; and the physician can always resume his practice in the restricted zone once the time duration of the covenant not to compete has expired." *Gillespie*, 251 Ill. App. 3d at 628, 622 N.E.2d at 1270. However, the *Gillespie* court did recognize "the possible adverse effects that enforcement of this restrictive covenant could have on the public," but it felt compelled to follow an earlier Illinois Supreme Court case, *Canfield v. Spear*, 44 Ill. 2d 49, 254 N.E.2d 433 (1969), which held that restrictive covenants between medical doctors are not detrimental to the public interest for the above-noted reasons. *Gillespie*, 251 Ill. App. 3d at 628, 622 N.E.2d at 1270. *Gillespie* is not controlling here for two important reasons. First, it was decided prior to *Dowd*, and second, *Gillespie* did not consider section 9.2 of the Opinions of the Council on Ethical and Judicial Affairs of the American Medical Association.

We are aware that our decision that the restrictive covenant constitutes undue interference with the public's right to a physician of their choice and that the enforcement of the provision would result in an unreasonable restraint of trade is contrary to *Prairie Eye Center, Ltd. v. Butler*, 305 Ill. App. 3d 442, 713 N.E.2d 610 (1999). In that case, the Fourth District refused to apply the public-policy considerations of free trade on which *Dowd* relied in prohibiting restrictive covenants between attorneys to restrictive covenants between medical

professionals, finding that the freedom to contract is an equally important public-policy consideration. *Prairie Eye Center, Ltd.*, 305 Ill. App. 3d at 448-49, 713 N.E.2d at 615-16. However, because we are not bound by other appellate court district decisions (see *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539, 605 N.E.2d 539, 542 (1992)), we decline to follow that holding. Instead, we believe that the rationale of *Dowd* is equally applicable to restrictive covenants between a physician and a health care provider such as AHI. Therefore, we reverse the trial court's entry of partial summary judgment in favor of AHI and CPCP, which enjoined plaintiff from practicing medicine within 20 miles of AHI's office. Because of our determinations on the issues raised by plaintiff, we need not address defendants' cross-appeal.

For the foregoing reasons, the judgment of the circuit court of Madison County is hereby reversed.

Reversed.

HOPKINS and KUEHN, JJ., concur.