Docket No. 90767–Agenda 28–September 2001.

VERA E. CARTER-SHIELDS, M.D., Appellee, v. ALTON HEALTH INSTITUTE 
et al.
, Appellants.

Opinion filed September 19, 2002.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

Plaintiff, Dr. Vera E. Carter-Shields, entered into an employment agreement with defendant, Alton Health Institute (AHI), a nonlicensed, general not-for-profit corporation, to provide services as a primary care physician. The employment agreement contained a restrictive covenant stating that plaintiff could not practice medicine within a 20-mile radius of AHI for two years after her separation from AHI. As a result of numerous disputes between plaintiff and AHI, plaintiff filed a complaint for declaratory judgment in the circuit court of Madison County, alleging that her employment agreement with AHI violated the prohibition against the corporate practice of medicine and, therefore, was illegal and unenforceable. During the pendency of her action, plaintiff resigned her position with AHI and opened her own medical office within the noncompetition area. Thereafter, the circuit court denied plaintiff’s request for declaratory judgment. Relying upon this court’s decision in 
Berlin v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1 (1997), the circuit court held that the employment agreement between AHI and plaintiff was valid and enforceable because it fell within an exception to the prohibition against the corporate practice of medicine. The circuit court also granted partial summary judgment in favor of defendants on their subsequently filed counterclaim requesting injunctive relief against plaintiff on the basis that plaintiff breached her employment contract by improperly resigning her position. In accordance with the restrictive covenant contained within the employment agreement, the circuit court enjoined plaintiff from practicing medicine for a period of two years within a 20-mile radius of AHI’s office. The appellate court reversed, holding that under the corporate practice of medicine doctrine and this court’s ruling in 
Berlin
, the employment agreement between plaintiff and AHI was void and unenforceable. 317 Ill. App. 3d 260. The appellate court further held that, in any event, the noncompetition covenant contained within the employment agreement constituted “an unreasonable restraint of trade and is unenforceable on public-policy grounds.” 317 Ill. App. 3d at 271. For the reasons that follow, the judgment of the appellate court is affirmed in part, and vacated in part.

BACKGROUND

The following facts are not in dispute. Plaintiff is a board-certified, family-practice physician who holds an Illinois license to practice medicine. Plaintiff practiced medicine with the United States Army from 1982, when plaintiff graduated from medical school, until 1995, when plaintiff relocated to the Alton area.

On January 4, 1995, plaintiff entered into a “Physician Services Agreement” (agreement) with Alton Health Institute (AHI). AHI is a nonlicensed, not-for-profit corporation organized under the General Not For Profit Corporation Act of 1986 (805 ILCS 105/101.01 (West 1996)). Two entities share equal ownership of AHI. AHI is 50% owned by St. Anthony’s Health Systems (St. Anthony’s). St. Anthony’s is a tax-exempt, not-for-profit corporation which is wholly owned by the Sisters of St. Francis of the Martyr St. George. St. Anthony’s is not licensed as a hospital or medical services corporation. However, St. Anthony’s does control two licensed hospitals located in the Alton area: St. Anthony’s Hospital and St. Clare’s Hospital. The president of St. Anthony’s is William Kessler, who is also the president of AHI. Kessler is not a physician, and he does not hold a medical license. The remaining 50% of AHI is owned by Alton Health Care Partnership (partnership). The partnership does not have tax-exempt status. Although the partnership is composed primarily of physician groups, it includes at least one nonphysician member.

The agreement entered into between plaintiff and AHI provided that plaintiff was to be employed by AHI on a full-time basis as a primary-care physician, that plaintiff was to receive an annual salary from AHI, and that plaintiff would be eligible for certain bonuses. The agreement outlined plaintiff’s duties as a physician in AHI’s employ. For example, the agreement set forth AHI’s expectations with respect to the productivity of plaintiff’s practice, including the number of weekly patient appointments plaintiff was required to schedule, as well as guidelines plaintiff was expected to follow in requesting time off. The agreement also outlined the obligations of AHI as plaintiff’s employer. For example, the agreement stated that AHI was to provide plaintiff with office space and was to furnish plaintiff with the equipment, services, supplies, and personnel that AHI “reasonably determines necessary” for the operation of plaintiff’s medical practice.

By its terms, the agreement was valid for an initial period of three years and was to automatically renew for an additional three-year period unless it was terminated in accordance with conditions specified within that document. The agreement provided that AHI had the right to immediately terminate the agreement for cause, as defined in the contract. In addition, the agreement provided that upon either party’s failure to cure a breach of a material provision of the agreement within 30 days following receipt of written notice from the nonbreaching party, the nonbreaching party could terminate the agreement upon an additional 10 days’ written notice. The agreement also contained a nonassignment clause, which provided that the agreement “may not be amended or revised except with the written consent of the parties thereto, and may not be assigned by any party except with the written consent of [the] other party; provided, however, [that AHI] may assign this Agreement to a subsidiary or affiliate without the prior written consent of Physician.”

 In addition, the agreement contained a noncompetition clause, which prohibited plaintiff from practicing medicine within 20 miles of AHI’s offices for two years after her employment with AHI ended. This clause provided as follows:

“During the term of this Agreement and for a period of two (2) years from the date this Agreement is terminated for any reason (the ‘Protected Period’), Physician agrees that he or she will not, without the prior written consent of [AHI], directly or indirectly (i) provide, or become associated with any other hospital group or other entity of any type engaged in the provision of medical or health care services or related administrative services within the medical practice area, which for purposes of this Agreement is the area within a twenty (20) mile radius of the Office; (ii) solicit, divert, take away, interfere with or contract to provide or render medical services to patients treated by Physician during the term of this Agreement; or (iii) solicit any person who is now or is hereafter an employee of [AHI] or is now or hereafter engaged as an independent contractor of [AHI] to become an employee or to be engaged as an independent contractor of a hospital medical group or any other entity that is competitive with [AHI].”

The agreement between plaintiff and AHI became effective on April 1, 1995, when plaintiff began her employment as an AHI physician. However, relations between plaintiff and AHI soon became strained. On October 6, 1995, plaintiff sent a five-page, single-spaced letter to William Kessler, president of AHI
.
 In this letter, plaintiff informed Kessler that she wanted to bring “certain issues concerning my employment with [AHI]” to his attention, and stated that she had discussed these matters on several occasions with AHI’s practice manager but that the issues had not been resolved. Plaintiff then set forth, with specificity, five separate complaints with respect to her employment with AHI: (1) that, contrary to earlier assurances made by AHI that plaintiff would be able to fulfill her obligations to perform Army reserve duty without negative repercussions, she was subsequently informed that she would be forced to use vacation time or take unpaid leave; (2) that plaintiff’s attendance at mandatory meetings set up by AHI reduced the amount of office time she could spend with patients; (3) that AHI failed to provide plaintiff with adequate staffing to set up and operate her medical practice; (4) that plaintiff had a dispute with AHI as to whether AHI had the right to compensation received by plaintiff as a result of her outside activity as a nursing home medical director; and (5) that although plaintiff had been assured by AHI that it would establish a retirement plan, she was concerned that AHI had taken no action to set up such a plan. In her letter, plaintiff stated that AHI’s interpretation of her employment contract was “vastly different from the understanding I reached with AHI for the job of which I was recruited,” and she requested that she be “involved in issues and decisions involving my office that relate to the practice.”

Over nine months later, on July 15,1996, plaintiff’s attorney sent a letter to counsel for AHI stating that representations made to plaintiff by AHI at the time plaintiff entered into the agreement “have never been fulfilled.” According to the letter, plaintiff’s concerns with respect to inadequate staffing had “not been heard” by AHI, and that plaintiff’s patients “have voiced their concern” upon observing plaintiff performing routine office duties such as “setting up rooms, giving shots, and taking care of their needs when others are sitting around.” In light of this situation, counsel for plaintiff proposed to negotiate an “equitable [s]eparation [a]greement” with AHI. To this end, plaintiff’s counsel stated that plaintiff would remain in the employ of AHI until September 9, 1996, and requested that the noncompetition provision of the agreement “be modified to allow my client to practice medicine everywhere, including Alton, Illinois except exceedingly close to [AHI].” These issues were never resolved to the satisfaction of the parties.

In April 1996, our appellate court rendered its decision in 
Berlin v. Sarah Bush Lincoln Health Center
, 279 Ill. App. 3d 447 (1996). A divided panel of the appellate court held that a restrictive covenant contained within an employment agreement between a surgeon and a licensed hospital was unenforceable because the hospital, through its employment agreement, was practicing medicine in violation of the prohibition against the corporate practice of medicine. Shortly thereafter, we agreed to review the decision of the appellate court in 
Berlin
 and granted the hospital’s petition for leave to appeal. 
Berlin v. Sarah Bush Lincoln Health Center
, 168 Ill. 2d 582 (1996).

On January 1, 1997, AHI assigned all of its physician service agreements, including that of plaintiff, to Community Primary Care Physicians, Ltd. (CPCP), the other defendant at bar. CPCP is a medical services corporation, organized under the Medical Corporation Act (805 ILCS 15/1 
et seq
. (West 1996)) and incorporated on December 9, 1996. The sole shareholder of CPCP is a licensed medical doctor, George Tucker.
(footnote: 1) The record reflects that plaintiff never consented in writing to the assignment of the agreement to CPCP. Shortly after the purported assignment, CPCP tendered a new employment agreement to plaintiff. Plaintiff did not sign the agreement tendered to her by CPCP and continued to work under the terms of her original agreement with AHI.

 On January 31, 1997, plaintiff brought an action in the circuit court of Madison County seeking a declaratory judgment that the employment agreement she entered into with AHI was invalid. In support of her position, plaintiff relied on the appellate court’s opinion in 
Berlin
 and alleged that the provisions contained within the agreement, including the noncompetition clause, were not enforceable because AHI, through its employment agreement with her, was practicing medicine in violation of the prohibition against the corporate practice of medicine. The record reflects that the parties refrained from actively pursuing this litigation while they were awaiting our review of the 
Berlin 
decision. During this time, plaintiff continued to work for AHI and to negotiate their dispute.

Approximately three months later, in a letter dated April 3, 1997, counsel for plaintiff advised Kessler that plaintiff was “providing notice of exercise of her right to terminate the Physician Services Agreement *** because of on-going breaches by [AHI] of material provisions of the Agreement.” This letter alleged three material breaches of the agreement by AHI: (1) AHI’s failure to provide office space and equipment reasonably necessary for the proper operation and conduct of plaintiff’s medical practice; (2) AHI’s failure to employ competent, adequately trained personnel necessary for the proper operation and conduct of plaintiff’s practice; and (3) AHI’s failure to timely and accurately bill for medical services provided by plaintiff’s practice. The letter concluded that AHI had not only materially breached the agreement, but also had significantly interfered with plaintiff’s “ability to practice medicine in accordance with the professional and ethical standards to which she is held accountable *** [and which, therefore,] endangers the welfare of her patients.” The letter stated that, in the near future, plaintiff “must end her association” with AHI. Plaintiff, however, did not resign from AHI at this time and continued to perform medical services in accordance with the agreement.

On April 17, 1997, an attorney representing both AHI and CPCP wrote a letter to plaintiff’s attorney, stating that plaintiff had not properly communicated her intention to terminate the agreement in accordance with the agreement’s terms. In addition, defendants’ attorney construed plaintiff’s April 3 letter as an anticipatory breach of the agreement, and counsel stated that, in the event of an actual breach, CPCP intended to pursue its remedies and enforce the termination provisions and covenants under the agreement. Counsel for defendants then responded in writing to each claim made by plaintiff in her April 3 letter. In the course of this response, counsel stated that “most of the allegations simply do not constitute a breach of the Agreement [and] [f]or those that arguably might, [AHI] and CPCP have corrected them or are in the process of correcting them.”

In October 1997, this court handed down its decision in 
Berlin
 
v. Sarah Bush Lincoln Health Center
, 179 Ill. 2d 1 (1997). We reversed the judgment of the appellate court and held that a licensed hospital is exempt from the prohibition against the corporate practice of medicine. We concluded, therefore, that a licensed hospital may employ licensed physicians to provide medical services.

On January 15, 1998, plaintiff wrote a letter to Kessler, stating that she was “sorry that we were not able to reach an accommodation to amicably resolve our differences” and that her resignation from AHI was effective as of that day. Following her resignation, plaintiff set up her own practice within the noncompetition area set forth in the agreement.

On February 2, 1998, AHI filed in the circuit court a counterclaim against plaintiff, seeking injunctive relief enforcing the noncompetition provision of the agreement. The counterclaim also sought monetary damages from plaintiff. CPCP thereafter moved to intervene in the case.
(footnote: 2) In response, plaintiff filed in the circuit court her own petition for injunctive relief, alleging that AHI and CPCP interfered with the medical practice she set up after leaving AHI.

In December 1998, the circuit court conducted a hearing to resolve plaintiff’s original declaratory judgment action. In a written order and opinion entered on December 14, 1998, the circuit court held that plaintiff’s employment by AHI and CPCP did not violate the prohibition against the corporate practice of medicine. First, the circuit court determined that plaintiff’s employment by CPCP from January 1, 1997, to January 15, 1998, was “unquestionably valid.” The circuit court noted that CPCP, as a medical services corporation formed under the Medical Corporation Act (805 ILCS 15/1 
et seq
. (West 1996)), has been sanctioned by the legislature to employ licensed physicians. Therefore, the court reasoned, the prohibition against the corporate practice of medicine did not prohibit CPCP from employing plaintiff. The circuit court, however, did not specifically address whether the assignment of the agreement by AHI to CPCP was valid and effective.

Second, with respect to plaintiff’s employment by AHI in 1995 and 1996, the circuit court also found that no violation of the corporate practice doctrine occurred. Relying upon our decision in 
Berlin
, the circuit court held that AHI fit within an exception to the prohibition against the corporate practice of medicine on the sole basis that AHI is a nonprofit, charitable organization. Accordingly, the circuit court held that the terms of plaintiff’s employment agreement were legal and enforceable. Plaintiff thereafter filed a motion to certify the circuit court’s order for interlocutory appeal. The circuit court denied plaintiff’s certification motion.

Defendants subsequently moved for partial summary judgment on their counterclaim for injunctive relief and for summary judgment on plaintiff’s injunctive relief action. On April 28, 1999, the circuit court granted defendants’ motions. The circuit court found that plaintiff’s letter dated April 3, 1997, was the only communication sent by plaintiff to AHI that explicitly referenced material breaches of the agreement. The circuit court held that this communication failed to properly invoke the agreement’s termination provisions, as it purported to terminate the agreement immediately upon the delivery of the letter. In addition, the court found that even if plaintiff’s letters did provide the requisite notice, the allegations made by plaintiff against defendants did not amount to breaches of the agreement. Therefore, the court concluded that it was plaintiff who had breached the agreement, and that AHI and CPCP were entitled to summary judgment on this issue. The circuit court further found the noncompetition provision in the agreement to be reasonable and enforceable. Accordingly, the circuit court enjoined plaintiff from practicing medicine within a 20-mile radius of the offices of AHI. The circuit court, however, reserved ruling on the issue of what, if any, monetary damages were due defendants. With respect to plaintiff’s request for injunctive relief based on allegations that defendants interfered with her medical practice after leaving AHI, the circuit court held that in light of its grant of injunctive relief to defendants, “the issue of injunctive relief to protect [plaintiff’s] now-enjoined practice is moot.” Upon plaintiff’s filing of an emergency motion for stay and a motion to reconsider, the circuit court modified its partial summary judgment order to interpret the 20-mile area described in the noncompetition provision as driving distance rather than as a straight line on a map.

On appeal, the appellate court, in a two-part opinion, reversed the judgment of the circuit court. 317 Ill. App. 3d 260. In the portion of the opinion designated as part “I,” the appellate court construed our decision in 
Berlin
 as reaffirming the viability of the corporate practice of medicine doctrine, and as creating a “narrow” exception to the application of the doctrine which arises only when “a 
licensed hospital
 *** enter[s] into contracts with physicians.” (Emphasis in original.) 317 Ill. App. 3d at 267. Thus, the appellate court held that AHI, which is an unlicensed health-care institute and which is controlled in part by a partnership of which one member is a nonphysician, did not fit within this narrow exception and was barred by the corporate practice of medicine doctrine from entering into an employment agreement with plaintiff. In the course of its ruling, the appellate court noted the long-standing conflict between plaintiff and William Kessler, AHI’s nonphysician president, which, in the view of the appellate court, “demonstrates the pitfalls of corporations practicing medicine.” 317 Ill. App. 3d at 267. Accordingly, the appellate court held that, from its inception, the agreement between AHI and plaintiff was void, unenforceable, and unassignable. In the portion of the opinion designated as part “II,” the appellate court went on to state that, even if it were “assum[ed] 
arguendo
 that 
Berlin
 applies to the facts in the instant case,” the noncompetition covenant in the agreement between AHI and plaintiff was “an unreasonable restraint of trade and is unenforceable on public-policy grounds.” 317 Ill. App. 3d at 271. The appellate court explained that an agreement restricting the right of a physician to practice medicine after leaving the employ of a health-care provider “limits not only the physician’s professional autonomy but also the patients’ freedom to chose a doctor.” 317 Ill. App. 3d at 270.

Defendants petitioned this court for leave to appeal pursuant to Rule 315(a) (177 Ill. 2d R. 315(a)). We granted defendants’ petition.

ANALYSIS

At issue in this appeal is whether the agreement entered into between AHI and plaintiff, including the noncompetition clause, is valid and enforceable. Defendants contend that the appellate court erred in holding that the corporate practice of medicine doctrine barred AHI from employing physicians such as plaintiff. AHI advances the argument that, under our decision in 
Berlin
, a charitable nonprofit organization such as AHI is excepted from application of the prohibition against the corporate practice of medicine, even if the organization is not licensed to practice medicine. Plaintiff contends that the appellate court correctly declined to extend the 
Berlin
 exception to unlicensed health centers such as AHI. We agree with plaintiff.

In 
Berlin
, the plaintiff physician entered into a five-year employment agreement with the defendant, Sarah Bush Lincoln Health Center. The defendant was a nonprofit corporation licensed under the Hospital Licensing Act (210 ILCS 85/1 
et seq
. (West 1994)) to operate a hospital. The employment agreement contained a noncompetition covenant which prohibited the plaintiff from providing health services within a 50-mile radius of the defendant for two years after the end of the employment agreement.

 After being in the employ of the defendant for two years, the plaintiff informed the defendant by letter that he was resigning and accepting another employment offer. After his resignation, the plaintiff immediately began working at a medical facility located one mile from the defendant. The defendant sought a preliminary injunction to prohibit the plaintiff from practicing at the competing facility based on the restrictive covenant contained within the employment agreement. In response, the plaintiff filed a complaint for declaratory judgment and a motion for summary judgment seeking to have the restrictive covenant invalidated on the basis that the defendant, by hiring the plaintiff to practice medicine as its employee, violated the proscription against a corporation practicing medicine. The circuit court agreed with the plaintiff, found the entire employment agreement unenforceable, and granted the plaintiff’s motion for summary judgment. As stated, a divided panel of the appellate court affirmed. 
Berlin
, 279 Ill. App. 3d at 459. This court reversed the judgment of the appellate court.

The issue addressed by this court in 
Berlin
 was framed narrowly: “whether the ‘corporate practice doctrine,’ as set forth by this court in 
People ex rel. Kerner
 
v. United Medical Service, Inc.
, 362 Ill. 442 (1936), prohibits licensed hospitals from employing physicians to provide medical services.” 
Berlin
, 179 Ill. 2d at 6-7. We began our analysis by reviewing the genesis of the prohibition against the corporate practice of medicine. We observed that this doctrine is premised on the rationale that “a corporation cannot be licensed to practice medicine because only a human being can sustain the education, training, and character-screening which are prerequisites to receiving a professional license,” and “[s]ince a corporation cannot receive a medical license, it follows that a corporation cannot legally practice the profession.” 
Berlin
, 179 Ill. 2d at 10. Accordingly, it has long been held that “the employment of physicians by corporations is illegal because the acts of the physicians are attributable to the corporate employer, which cannot obtain a medical license.” 
Berlin
, 179 Ill. 2d at 10. We further observed in 
Berlin
 that the prohibition against the corporate practice of medicine is also supported by “several public policy arguments which espouse the dangers of lay control over professional judgment, the division of the physician’s loyalty between his patient and his profitmaking employer, and the commercialization of the profession.” 
Berlin
, 179 Ill. 2d at 10.

We noted in 
Berlin
 that this court first addressed the corporate practice doctrine as it pertained to medicine in the 1936 decision in 
People ex rel. Kerner v. United Medical Service, Inc.
, 362 Ill. 442 (1936). In 
Kerner
, a general corporation operated a low-cost health clinic in which all medical services were rendered by duly-licensed physicians. The State alleged that the corporation was illegally engaged in the practice of medicine in violation of the Medical Practice Act (Ill. Rev. Stat. 1935, ch. 91, par. 1 
et seq.
). This court agreed with the State, and rejected the contention advanced by the defendant that the practice of medicine does not encompass the corporate ownership of a health clinic where treatment is rendered solely by licensed physician employees. 
Berlin
, 179 Ill. 2d at 13, citing 
Kerner
, 362 Ill. at 454.

We observed in 
Berlin
 that, since this court’s decision in 
Kerner
, “no Illinois court has applied the corporate practice of medicine [doctrine] *** or specifically addressed the issue of whether licensed hospitals are prohibited from employing physicians.” 
Berlin
, 179 Ill. 2d at 13. Therefore, we engaged in a survey of decisions from other jurisdictions with respect to the application of the corporate practice of medicine doctrine to hospitals and concluded that these rulings could be divided into three categories. First, we observed that some jurisdictions refused to adopt the prohibition against the corporate practice of medicine altogether. We rejected this approach. Second, we noted that other jurisdictions determined that the corporate practice of medicine doctrine is inapplicable to nonprofit hospitals and health associations on the basis that the public policy arguments supporting the doctrine do not apply to physicians employed by charitable institutions. Third, we observed that the remainder of jurisdictions have determined that the prohibition against the corporate practice of medicine does not apply to hospitals which employ physicians because hospitals are authorized under other laws to provide medical treatment to patients. We commented that we found the latter two approaches “persuasive.” 
Berlin
, 179 Ill. 2d at 15.

We then underscored that the matter before us in 
Berlin
 was factually distinguishable from 
Kerner. 
We explained that the corporate practice of medicine prohibition set forth in 
Kerner
 was “inferred from the general policies behind the Medical Practice Act” and that “[s]uch a prohibition is entirely appropriate to a general corporation possessing no licensed authority to offer medical services to the public, such as the appellant in 
Kerner
.” 
Berlin
, 179 Ill. 2d at 16. We declined in 
Berlin
, however, to apply the corporate practice of medicine doctrine to licensed hospitals. We reasoned that the prohibition against the corporate practice of medicine is inapplicable “when a corporation has been sanctioned by the laws of this state to operate a hospital.” 
Berlin
, 179 Ill. 2d at 16. We held that this narrow exception to the application of the corporate practice doctrine was supported by the fact that numerous statutes have been enacted by the General Assembly which “clearly authorize, and at times mandate, licensed hospital corporations to provide medical services” and that the “authority to employ duly-licensed physicians for that purpose is reasonably implied from these legislative enactments.” 
Berlin
, 179 Ill. 2d at 17.

In addition, we noted that the public policy concerns supporting the prohibition against the corporate practice of medicine do not arise where a licensed hospital enters into an employment agreement with physicians. For example, we observed that the “concern for lay control over professional judgment is alleviated in a licensed hospital, where generally a separate professional medical staff is responsible for the quality of medical services rendered in the facility.” 
Berlin
, 179 Ill. 2d at 18. We further noted that concerns with respect to the commercialization of health care “are relieved when a licensed hospital is the physician’s employer,” because “[h]ospitals have an independent duty to provide for the patient’s health and welfare.” 
Berlin
, 179 Ill. 2d at 19. Therefore, we concluded that because “a duly-licensed hospital possesses legislative authority to practice medicine by means of its staff of licensed physicians,” it is therefore “excepted from the operation of the corporate practice of medicine doctrine.” 
Berlin
, 179 Ill. 2d at 19.

Our decision in 
Berlin
 stands for the proposition that the proscription against the corporate practice of medicine is, at root, animated by the public policy purpose of safeguarding the public health and welfare by protecting the physician-patient relationship from lay interference with the physician’s professional judgment. The exercise of control or influence over the medical decisionmaking of a physician by a lay, unlicensed corporation results in a division of the physician’s loyalty between the often divergent interests of the corporation and the patient. We determined in 
Berlin
 that the public policy purpose underpinning the corporate practice doctrine would not be adversely affected by carving out a narrow exception for an entity, such as a hospital, that must meet certain professional criteria established by the legislature to become a licensed health-care provider. Indeed, our decision in 
Berlin 
repeatedly emphasized the role of licensing in the genesis and development of the corporate practice doctrine. As stated in 
Berlin
, the prohibition against the corporate practice of medicine was derived from the legislative intent manifest in enacting the Medical Practice Act (225 ILCS 60/1 
et seq.
 (West 1996)). The Medical Practice Act “regulat[es] medical professionals in order to protect the public welfare” (
Potts v. Illinois Department of Registration & Education
, 128 Ill. 2d 322, 330 (1989)) and, to this end, mandates that medicine shall not be practiced without a valid license. See 225 ILCS 60/3 (West 1996). We concluded in 
Berlin
 that in light of the fact that the General Assembly enacted a comprehensive licensing scheme for hospitals, and thereby extended to hospitals the authority to provide medical services to the public, the corporate practice doctrine did not apply in that instance. Indeed, the stated purpose of the Hospital Licensing Act (210 ILCS 85/1 
et seq.
 (West 2000)) mirrors the public policy purpose in enacting the Medical Practice Act: the safeguarding of the public health.
(footnote: 3) Thus, because health-care services provided by hospitals are regulated through state licensing procedures and agencies, the public policy concerns supporting the application of the prohibition against the corporate practice of medicine do not arise in the hospital context.

In the matter at bar, defendants contend that “the rationale that excepts licensed hospitals from the corporate practice of medicine doctrine also applies to charitable nonprofit health organizations.” In their submissions to this court, defendants emphasize that AHI is a nonprofit organization which has as its charitable mission the delivery of health-care services for all residents of the Alton community, especially the poor. Therefore, defendants contend, AHI “fits squarely within” the approach adopted by other jurisdictions, and commented upon favorably by this court in 
Berlin
, which holds that the public policy arguments underpinning the prohibition against the corporate practice of medicine do not apply where physicians are employed by charitable institutions. We decline to afford our decision in 
Berlin
 the expansive interpretation advocated by defendants. As stated, the holding in 
Berlin
 that hospitals are exempt from application of the corporate practice of medicine doctrine was premised on the fact that hospitals are sanctioned under state law to provide medical services to the public and are regulated by state agencies to assure compliance with licensing mandates. Although we noted in 
Berlin
 that some jurisdictions take the approach that the corporate practice doctrine does not apply to nonprofit hospitals and health associations, we neither discussed the significance of nonprofit status nor relied upon that consideration in arriving at our holding. In fact, we expressly stated in 
Berlin
 that because the
 “authorities and duties of licensed hospitals are conferred equally” upon nonprofit and for-profit hospitals, there is “
no justification for distinguishing” between licensed entities on the basis of profit. 
Berlin
, 179 Ill. 2d at 18. We therefore reject defendants’ contention that 
Berlin
 created an exception to the corporate practice doctrine for nonprofit entities.

In addition, we decline defendants’ suggestion to now create an exception to the prohibition against the corporate practice of medicine on the sole basis that a corporation enjoys nonprofit status.

The fact that an entity has achieved nonprofit status is unrelated to whether that entity meets the requirements set forth by the legislature to ensure that quality medical services are provided to the public. Creating an exception to the corporate practice of medicine doctrine based exclusively upon the fact that an entity is nonprofit would not advance the public interest in safeguarding the physician’s professional judgment from lay interference or protecting the public’s general health and welfare.

We conclude that the employment agreement entered into between AHI and plaintiff violated the prohibition against the corporate practice of medicine and, therefore, was void from its inception. At the time AHI and plaintiff entered into the agreement, AHI was not licensed to provide medical services to the public and, therefore, was not subject to state requirements assuring the protection of the public health and welfare. The concerns of lay control over professional judgment and the division of a physician’s loyalties which underpin the prohibition against the corporate practice of medicine are apparent in this case. In her October 6, 1995, letter to AHI, plaintiff requests that she be “involved in issues and decisions involving my office that relate to the practice.” In a subsequent letter dated April 3, 1997, plaintiff expresses her frustration that AHI had interfered with her “ability to practice medicine in accordance with the professional and ethical standards to which she is held accountable *** [and which, therefore,] endangers the welfare of her patients.” We agree with the appellate court below that this matter demonstrates “the pitfalls of corporations practicing medicine.” 317 Ill. App. 3d at 267.

Although defendants acknowledge AHI’s status as an unlicensed, general not-for-profit corporation, defendants nevertheless contend, without citation to authority, that because AHI was subject to other rules and regulations applicable to health-care providers, such as federal Medicare regulations, this regulatory oversight was analogous to being licensed. We reject this contention. That AHI was subject to certain rules and regulations is not the equivalent of being subject to, and regulated by, a comprehensive licensing scheme established by the legislature which mandates that medical-care providers meet specific requirements to safeguard the public health. Accordingly, the appellate court below correctly held that under the corporate practice of medicine doctrine, the agreement between plaintiff and AHI, including the noncompetition covenant, was void, unenforceable and unassignable. Therefore, we affirm the judgment of the appellate court with respect to this specific issue.

In sum, we continue to adhere to our rationale in 
Berlin
 that the prohibition against the corporate practice of medicine does not apply to a corporate entity which has been sanctioned by the legislature to practice medicine by means of employing licensed physicians. Indeed, the General Assembly has broad regulatory power with respect to the health-care professions, and it is within the discretion of the legislature to not only determine what is required in the public interest and welfare, but also to determine the measures needed to secure such interest. 
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 41 (2001). We conclude that a focus upon licensing best protects the public’s interest in quality health care and directly addresses the public policy concerns underpinning the corporate practice doctrine. It is through state licensing requirements that professional competency is assured and that the public welfare is protected. See 
Potts
, 128 Ill. 2d at 330-31. It is within the province of the legislature, in the exercise of its broad regulatory power, to expand the exception to the corporate practice doctrine by expanding the types of corporate entities that are required to submit to licensing requirements and regulatory oversight before they may provide medical services to the public. In this way, a corporation, wishing to employ physicians, may demonstrate its qualifications and accept its responsibilities as a licensed and regulated participant in the medical care system.

Indeed, the General Assembly has recently exercised its authority in this regard. In Public Act 92–455, effective September 30, 2001, the legislature has taken steps to clarify the scope of the prohibition against the corporate practice of medicine. This enactment amends the Hospital Licensing Act by adding a new subsection that allows licensed hospitals and “hospital affiliates”
(footnote: 4) to employ licensed physicians upon meeting specific, enumerated requirements designed to safeguard the public health and maintain quality patient care. 210 ILCS 85/10.8 (West Supp. 2001). The parties at bar agree that Public Act 92–455 does not apply to the matter at bar. We comment on this enactment, however, as an example of the legislature’s exercise of its broad regulatory powers with respect to the provision of health-care services. For example, the Act sets forth concise restraints assuring independent guarantees of medical judgment by physicians (210 ILCS 85/10.8(a)(3) (West Supp. 2001)) and also contains provisions requiring that ‘[i]ndependent physicians, who are not employed by an employing entity, periodically review the quality of the medical services provided by the employed physician to continuously improve patient care.” 210 ILCS 85/10.8(a)(2) (West Supp. 2001). In sum, by passing this legislation, the General Assembly has taken steps to eliminate the concept of lay control from the practice of medicine, to require licensed providers to meet certain qualifications, and to assure the monitoring of the quality of health care provided to the public.

In light of our holding that the employment agreement entered into between plaintiff and AHI was, from its inception, void, unenforceable and unassignable under the corporate practice of medicine doctrine, we need not address the arguments made by the parties at bar with respect to the holding of the appellate court below concerning the general validity of noncompetition covenants contained in physician employment agreements. Indeed, as the appellate court had already determined in part “I” of its opinion that the agreement at bar was void under 
Berlin
 and the corporate practice doctrine, any statements or holdings by the appellate court in that portion of its opinion designated as part “II” with respect to the validity of all noncompetition covenants in physician employment agreements were wholly advisory. Advisory opinions are to be avoided. 
Oliveira v. Amoco Oil Co.
, No. 89497, slip op. at 18 (June 20, 2002), citing 
Barth v. Reagan
, 139 Ill. 2d 399, 419 (1990). For this reason, we express no opinion with respect to the general validity of noncompetition clauses contained within physician employment agreements. We also vacate those portions of the appellate court judgment which addressed this specific issue. See 
Oliveira
, slip op. at 18.

CONCLUSION

For the reasons stated, the judgment of the appellate court is affirmed in part and vacated in part.

Affirmed in part and vacated in part.

JUSTICES FREEMAN and RARICK took no part in the consideration or decision of this case.

FOOTNOTES
1:     
1
On January 31, 1997, Dr. Tucker executed a written consent to appoint Kessler as the executive director of CPCP.

2:     
2
Although there is no record of CPCP’s motion to intervene having been granted by the circuit court, CPCP was allowed to participate in the proceedings below and was characterized as an “intervenor” by the circuit court. 

3:     
3
The Hospital Licensing Act is intended to “provide for the better protection of the public health through the development, establishment, and enforcement of standards (1) for the care of individuals in hospitals, (2) for the construction, maintenance, and operation of hospitals which, in light of advancing knowledge, will promote safe and adequate treatment of such individuals in hospital, and (3) that will have regard to the necessity of determining that a person establishing a hospital have the qualifications, background, character and financial resources to adequately provide a proper standard of hospital service for the community.” 210 ILCS 85/2(a) (West 2000).

4:     
4
The Act defines a “[h]ospital affiliate” as an organization “devoted primarily to the provision, management, or support of health care services” and that “directly or indirectly controls, is controlled by, or is under the common control of the hospital.” The Act defines “[c]ontrol” as having at least an equal or majority interest, and requires that the affiliate “shall be 100% owned or controlled by any combination of hospitals, their parent corporations, or physicians licensed to practice medicine in all its branches in Illinois.” 210 ILCS 85/10.8(b) (West Supp. 2001).