JOSEPH P. STORTO, P.C., d/b/a Storto, Finn and Tenuto, Plaintiff-Appellant, v. DIONNE R. BECKER, Defendant-Appellee.

Second District    No. 2—02—1008

Opinion filed June 25, 2003.

Michelle L. Moore, of Law Office of Michelle L. Moore, of Oak Brook, for appellant.

Benjamin P. Hyink, of Hyink Law Firm, of Oak Brook, for appellee.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The instant controversy arises from an attorney fees dispute between the plaintiff law firm, Joseph P. Storto, P.C., d/b/a Storto, Finn & Tenuto, and its former client, the defendant, Dionne Becker. After the parties severed their attorney-client relationship, the plaintiff filed a petition seeking $1,823.92 in attorney fees. The defendant responded that her contract with the plaintiff law firm was void because the plaintiff law firm was not registered to practice law in Illinois as required by Supreme Court Rule 721(c) (166 Ill. 2d. R. 721(c)). She subsequently filed a motion for summary judgment, arguing that she was entitled to judgment as a matter of law. The trial court granted the defendant's motion for summary judgment, and the plaintiff thereafter filed a timely notice of appeal. We reverse and remand for additional proceedings.

On November 21, 2000, the defendant entered into a contract with the plaintiff to represent her in her postdissolution proceedings against her former husband, James Becker. The plaintiff represented the defendant over the next 14 months. On January 10, 2002, the defendant filed a motion for substitution of attorneys and requested that Benjamin Hyink be allowed to file an appearance on behalf of the defendant. The trial court granted the motion and also granted the plaintiff leave to file a petition for attorney fees.

On March 20, 2002, the plaintiff filed a petition, as amended, seeking to collect $1,823.92 in attorney fees from the defendant. The petition noted that the defendant had already paid $21,136 in attorney

fees in the course of the plaintiff's representation of her. On April 15, 2002, the defendant filed an answer to the petition, denying that the fees the plaintiff sought to recover had actually been incurred or were reasonable.

On June 21, 2002, the defendant filed a motion for summary judgment, arguing that she was entitled to judgment as a matter of law because the plaintiff had never been registered to practice law in Illinois as was required by Supreme Court Rule 721 (166 Ill. 2d R. 721). Because the plaintiff was not registered to practice law, the defendant argued that the contract she had entered into with the plaintiff for legal fees was void. As such, she argued that she was not obligated to pay any of the plaintiff's purported fees.

On July 5, 2002, the plaintiff filed a response. The plaintiff argued that the defendant's argument was moot because, on June 24, 2002, it had paid its registration fees to engage in the practice of law for 1981 and all successive years through 2002. The plaintiff also argued that, even if it was not properly registered at the time in question, this did not affect the ability of its licensed attorneys to represent the defendant. Furthermore, the plaintiff argued that because Rule 721 was not enacted to protect public health and safety, the defendant could not seek to void her contract with the plaintiff due to its noncompliance with Rule 721.

On September 9, 2002, following a hearing, the trial court granted the defendant's motion for summary judgment. The trial court held that no valid contract existed between the plaintiff and the defendant. The trial court explained that, pursuant to Supreme Court Rule 721, no corporation that was not properly registered could practice law. Because the plaintiff was not properly registered, it was without authority to provide legal services. Because it was without authority to render legal services, the contract it had entered into with the defendant was not valid. Following the trial court's ruling, the plaintiff filed a timely notice of appeal.

■ At the outset, we note that the purpose of a motion for summary judgment is to determine whether a genuine issue of triable fact exists and that such a motion should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2—1005(c) (West 2000)). *Nickel v. Hollywood Casino-Aurora, Inc.*, 313 Ill. App. 3d 925, 928-29 (2000). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997).

The disposition of a motion for summary judgment is not discretionary and the standard of review is *de novo*. *Evans v. General Motors Corp.*, 314 Ill. App. 3d 609, 617 (2000).

■ The Illinois Supreme Court has promulgated certain rules on the discipline of attorneys and their admission to the state bar. These rules provide the requirements for those wanting to attain a license to practice law in the state. See 188 Ill. 2d R. 701. The rules also provide for additional requirements for those seeking to practice law through a professional corporation. See 166 Ill. 2d R. 721. For instance, Rule 721(a) requires that each corporate shareholder be licensed to practice law. See 166 Ill. 2d R. 721(a). Rule 721(b) requires that the corporation do nothing that would violate the standards of professional conduct applicable to attorneys. See 166 Ill. 2d R. 721(b). Rule 721(c) requires each corporation that seeks to practice law to register with the Illinois Supreme Court. See 166 Ill. 2d R. 721(c). Specifically, this section provides:

> "No corporation or association or limited liability company shall engage in the practice of law in Illinois, or open or maintain an establishment for that purpose in Illinois, without a certificate of registration issued by this court." 166 Ill. 2d R. 721(c).

Additionally, each corporation must pay an initial registration fee of $50 (166 Ill. 2d R. 721(e)) and an annual renewal fee of $40 to maintain its certificate of registration (166 Ill. 2d R. 721(f)). Finally, "[a]ny violation of [Rule 721] by the corporation *** is a ground for the court to terminate or suspend the right of the corporation *** to practice law or otherwise to discipline it." 166 Ill. 2d R. 721(b). (We note that the Illinois Supreme Court has recently amended Rule 721. See Official Reports Advance Sheet No. 8 (April 16, 2003), R. 721, effective July 1, 2003. However, these amendments are not germane to the case at bar.)

The question we are confronted with herein is whether a law firm's failure to register as a corporation with the Illinois Supreme Court pursuant to Rule 721 provides a remedy to a former client of the law firm to void an otherwise valid contract with the law firm because of that Rule 721 violation. We note that no Illinois court has previously addressed this precise issue. However, our research reveals that when a lawyer violates a supreme court rule regarding the discipline of attorneys and their admission to the state bar, a client or interested party, before receiving relief, must demonstrate how he has been harmed by the violation of the rule. See *People v. Brigham*, 151 Ill. 2d 58 (1992); *Murges v. Bowman*, 275 Ill. App. 3d 153 (1995).

In *Brigham*, the defendant filed a postconviction petition arguing that his trial counsel was ineffective because he was not on the master

roll of attorneys at the time of his trial. *Brigham*, 151 Ill. 2d at 59. The trial court dismissed the defendant's petition, but the appellate court reversed, finding that the defendant had been denied his right to effective assistance of counsel. *Brigham*, 151 Ill. 2d at 59. The supreme court then reversed the appellate court, holding that the defendant had not received ineffective assistance of counsel. *Brigham*, 151 Ill. 2d at 71.

The supreme court explained that the attorney's name had been removed from the master roll of attorneys due to his failure to pay his registration dues. *Brigham*, 151 Ill. 2d at 60. The supreme court noted that under Rule 756, " '[a]n attorney who is not listed on the master roll is not entitled to practice law or to hold himself out as authorized to practice law in this State.' " *Brigham*, 151 Ill. 2d at 61, quoting 134 Ill. 2d R. 756(b). The supreme court found that whether a lawyer's failure to pay his registration fee prevented him from providing competent legal assistance was an issue of first impression in Illinois. *Brigham*, 151 Ill. 2d at 61. However, the supreme court noted that several other jurisdictions had considered that precise issue. The supreme court noted the court's observation in *Reese v. Peters*, 926 F.2d 668, 670 (7th Cir. 1991):

> " 'Lawyers who do not pay their dues violate a legal norm, but not one established for the protection of clients; suspensions used to wring money from lawyers' pockets do not stem from any doubt about their ability to furnish zealous and effective assistance.' " *Brigham*, 151 Ill. 2d at 65, quoting *Reese*, 926 F.2d at 670.

The supreme court additionally considered the Kansas Supreme Court's holding in *Johnson v. State*, 225 Kan. 458, 590 P.2d 1082 (1979):

> " 'Although the payment of the registration fee is a prerequisite to the ethical practice of law in this state, the payment itself has nothing to do with the legal ability of the attorney. *Just as the payment of the fee does not guarantee that an attorney will practice law in a competent manner, the nonpayment of the fee does not necessarily imply that the nonpaying attorney will perform in an incompetent manner.*' " (Emphasis added.) *Brigham*, 151 Ill. 2d at 66, quoting *Johnson*, 225 Kan. at 465, 590 P.2d at 1087.

Based on these foreign authorities, the supreme court held that a defendant was not automatically deprived of his sixth amendment right to counsel because his attorney had failed to pay his registration dues. *Brigham*, 151 Ill. 2d at 70. Instead, the supreme court held that, to find a defendant's sixth amendment right to counsel violated, there must be additional factors above and beyond a mere suspension for nonpayment of bar dues. *Brigham*, 151 Ill. 2d at 71.

In *Murges v. Bowman*, 275 Ill. App. 3d 153 (1995), the plaintiff law firm sought a preliminary injunction against two of its former partners (the defendants) who had removed client files from the plaintiff's office. After the trial court granted the preliminary injunction, the defendants appealed. They argued, in part, that because the plaintiff had never registered as a corporation with the supreme court pursuant to Rule 721, it had no ascertainable right to seek injunctive relief. *Murges*, 275 Ill. App. 3d at 159-60. The reviewing court rejected this argument. *Murges*, 275 Ill. App. 3d at 160. The reviewing court found that although the plaintiff may have violated some ethical rules, the defendants were well aware that they were corporate employees. *Murges*, 275 Ill. App. 3d at 160. Because they were not harmed by the plaintiff's failure to register with the Illinois Supreme Court as a corporation, the defendants could not use this as a defense to the allegations that they had breached their fiduciary duties to the plaintiff. See *Murges*, 275 Ill. App. 3d at 160.

■ Based on *Brigham* and *Murges*, we believe that although a plaintiff law firm has violated a supreme court rule regarding the admission of attorneys, this violation does not warrant the defendant any special relief unless the defendant can demonstrate that he has been harmed by the plaintiff's violation of the rule at issue. As such, we conclude that in order for a client to be excused from his contractual obligations with a law firm due to that law firm's violations of Rule 721, the client must demonstrate that he was harmed by the law firm's violation. We note that this conclusion is supported by a recent case from an appellate court in California that was confronted with a nearly identical issue. See *Olson v. Cohen*, 106 Cal. App. 4th 1209, 131 Cal. Rptr. 2d 620 (2003).

In *Olson*, the defendant law firm failed to register with the state bar as a law corporation as was required by statute. *Olson*, 106 Cal. App. 4th at 1212, 131 Cal. Rptr. 2d at 622. The plaintiff, a former client of the defendant, filed a class action seeking disgorgement of all legal fees collected by the defendant for work occurring during the period before the defendant was registered to practice law as a law corporation with the state bar. *Olson*, 106 Cal. App. 4th at 1212, 131 Cal. Rptr. 2d at 622. The trial court granted the defendant's motion to dismiss the lawsuit and the reviewing court affirmed. *Olson*, 106 Cal. App. 4th at 1212-13, 131 Cal. Rptr. 2d at 622. The reviewing court explained that a law firm's decision to incorporate was not undertaken for the protection of clients. *Olson*, 106 Cal. App. 4th at 1215, 131 Cal. Rptr. 2d at 625. Rather, the decision to incorporate was typically made to obtain tax advantages and to avoid personal liability for the corporation's debts. *Olson*, 106 Cal. App. 4th at 1215, 131 Cal. Rptr. 2d at 625.

The reviewing court also determined that the plaintiff had not been harmed by the defendant's failure to register as a corporation. *Olson*, 106 Cal. App. 4th at 1214, 131 Cal. Rptr. 2d at 624. The reviewing court noted that the plaintiff had made no allegation that he relied upon the existence of a corporate entity in seeking legal services or that he was injured by the delay in registration. *Olson*, 106 Cal. App. 4th at 1214, 131 Cal. Rptr. 2d at 624. The reviewing court also found that the plaintiff had not alleged that the defendant had committed any act of malpractice. *Olson*, 106 Cal. App. 4th at 1214, 131 Cal. Rptr. 2d at 624. Accordingly, because the plaintiff had failed to allege either justifiable reliance or resulting damage to himself due to the defendant's failure to register, requiring the defendant to disgorge fees because of a failure to register would be disproportionate to the wrong. *Olson*, 106 Cal. App. 4th at 1216, 131 Cal. Rptr. 2d at 625-26.

As in *Olson*, we believe that in order for a client to be excused from his contractual obligation to a law firm because of that law firm's failure to register as a corporation, the client must demonstrate that he has been prejudiced by the law firm's failure to register. Absent any prejudice, allowing the client to escape his contractual obligations would be disproportionate to the wrong committed by the law firm. See *Olson*, 106 Cal. App. 4th at 1216, 131 Cal. Rptr. 2d at 625-26; see also *Dixon v. Mercury Finance Co. of Wisconsin*, 296 Ill. App. 3d 353, 358, 360 (1998) (although the defendant finance company was not properly licensed in Illinois, it would be improper and excessively harsh to void its contract with the plaintiff on those grounds where the plaintiff had not suffered any harm due to the defendant being unlicensed).

■ Here, the record reveals that the plaintiff law firm was not registered as a corporation with the supreme court as required by Rule 721 when it was representing the defendant. (Although the plaintiff subsequently paid its registration fees for the time at issue, based on our resolution of this appeal, we need not address whether this late payment applied retroactively.) There is, however, no evidence in the record that the defendant was harmed by the plaintiff's failure to register. There are no allegations that the defendant contracted with the plaintiff because she believed that the plaintiff's law firm was incorporated. There are also no allegations that the plaintiff committed any malpractice. Accordingly, absent any evidence that the defendant was harmed by the plaintiff's lack of compliance with Rule 721, we hold that the trial court erred in determining that the defendant was entitled to judgment as a matter of law on the plaintiff's petition for attorney fees.

In so ruling, we find without merit the defendant's argument that

the contract she entered into with the plaintiff was void as a matter of public policy. The plaintiff contends that Rule 721 was enacted to protect public health and safety. As a general rule, courts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a license, where the legislation was enacted for the protection of the public and not as a revenue measure. *Ransburg v. Haase*, 224 Ill. App. 3d 681, 685 (1992).

We do not believe that Rule 721 was enacted for the protection of the public safety. Rather, we believe that it was enacted to generate additional revenue. We note that Rule 721 requires that a law firm pay an annual fee to renew its registration with the Illinois Supreme Court. See 166 Ill. 2d R. 721(f). We further note that Rule 721 carries no civil or criminal penalties for noncompliance. Such criminal or civil penalties would indicate that the licensing requirements were enacted because they have a significant impact on public health or safety. See, *e.g., Kaplan v. Tabb Associates, Inc.*, 276 Ill. App. 3d 320, 324-25 (1995) (because the practice of architecture by a corporation carried with it a criminal penalty for unlicenced practice, a contract involving unlicensed architecture corporation was void as a matter of public policy). Moreover, we note that statutes have been interpreted as necessary for public safety if they were enacted to provide assurance of adequately trained professionals. See *Tovar v. Paxton Community Memorial Hospital*, 29 Ill. App. 3d 218, 220 (1975) (the purpose of the statutes establishing a licensing requirement for doctors is to protect the public by assuring them of adequately trained practitioners). However, as discussed above, our supreme court in *Brigham* determined that a lawyer's failure to pay his registration fees did not prevent him from providing competent legal advice. *Brigham*, 151 Ill. 2d at 70. In a similar fashion, we do not believe that a law firm's failure to pay its corporate registration fees will undermine the public's trust that its licensed attorneys can practice law competently. See *Brigham*, 151 Ill. 2d at 70.

Furthermore, we note that a law firm generally does not incorporate to benefit its clients or to advance the public welfare. See *Olson*, 106 Cal. App. 4th at 1215, 131 Cal. Rptr. 2d at 625. Rather, a law firm incorporates to enjoy certain tax benefits and to reduce its potential civil liability. See *Olson*, 106 Cal. App. 4th at 1215, 131 Cal. Rptr. 2d at 625. Based on this reality, we believe that the requirements that a law corporation register with the Illinois Supreme Court pursuant to Rule 721 and annually pay a fee were enacted merely to generate revenue.

Finally, in the event a law firm fails to comply with the requirements of Rule 721, it loses its right to invoke the corporate protections

of limited liability that are encompassed in Rule 721. See *Olson*, 106 Cal. App. 4th at 1217, 131 Cal. Rptr. 2d at 625-26 (lawyer's failure to comply with rules of incorporation would cause his law firm to be treated as a sole proprietorship and would deny him the benefits of conducting his law practice through a corporate entity); see also *People ex rel. Tilton v. Mackey*, 255 Ill. 144, 151 (1912) (failure to comply with requirements of incorporation causes business to lose its corporate existence). Consequently, a client who has been the victim of an incorporated law firm's malpractice would be in a better position if the law firm had not complied with Rule 721 than if it had. See *Olson*, 106 Cal. App. 4th at 1217, 131 Cal. Rptr. 2d at 625-26. Based on this reality, it is apparent that Rule 721 was not enacted for public safety but rather to benefit the law firms that were seeking to gain the benefits of incorporation. Accordingly, we hold that the plaintiff's failure to register as a corporation pursuant to Rule 721 did not render its contract with the defendant void on public policy grounds. See *Ransburg*, 224 Ill. App. 3d at 685.

For the foregoing reasons, the judgment of the circuit court of Du Page County granting the defendant's motion for summary judgment is reversed and we remand for additional proceedings consistent with this opinion.

Reversed and remanded.

CALLUM and KAPALA, JJ., concur.