MARY T. RIGGS, Plaintiff and Counterdefendant-Appellee, v. WOMAN TO WOMAN, OBSTETRICS AND GYNECOLOGY, P.C., Defendant and Counter-plaintiff-Appellant.

Second District    No. 2—03—1434

Opinion filed July 8, 2004.

Samuel S. Melei, of Coonen & Roth, Ltd., of Crystal Lake, and Stuart M. Gimbel, of Kamensky & Rubinstein, of Lincolnwood, for appellant.

Patrick M. Ouimet and Robert O. Ackley, both of Sarles & Ouimet, and Sandra S. Kerrick, of Caldwell, Berner & Caldwell, both of Woodstock, for appellee.

JUSTICE BYRNE delivered the opinion of the court:

This matter comes before the court as an interlocutory appeal brought pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). Plaintiff, Dr. Mary T. Riggs, filed the underlying action seeking, *inter alia*, a declaration that she was not required to abide by a contractual obligation, including a covenant not to compete, contained in her physician agreement with defendant, Woman to Woman Obstetrics and Gynecology, P.C. Plaintiff claimed that defendant's failure to register as a professional corporation with the Illinois Department of Professional Regulation (IDPR) pursuant to section 12 of the Professional Service Corporation Act (the Act) (805 ILCS 10/12 (West 2002)) rendered the agreement void *ab initio*. Defendant counterclaimed, seeking enforcement of plaintiff's covenant. The trial court granted plaintiff's motion for summary judgment on count I of her complaint and dismissed defendant's counterclaim. The court found: (1) as a matter of law, the Act was intended to be regulatory for the protection of the public health and safety in the practice of medicine; (2) defendant explicitly represented, untruthfully, that it was licensed as a professional corporation under the Act; and (3) as a result, defendant was not authorized to engage in the practice of medicine under the Act. Accordingly, the court held that the agreement between the parties was void *ab initio*. Finding that there was substantial ground for difference of opinion regarding its legal conclusion and that an immediate appeal could materially advance the ultimate termination of the litigation, the trial court granted plaintiff's motion for certification pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). The trial court certified the following questions for our review:

"(1) Whether the Act's licensing requirements for medical corporations is intended to protect the public's health, safety, or welfare[.]

(2) Whether defendant's failure to comply with the Act's certificate of registration requirement rendered the employment agreement void *ab initio*[.]"

We answer both in the negative.

## BACKGROUND

Plaintiff filed the instant lawsuit after she discovered that defendant allegedly had engaged in a fraudulent accounting scheme designed to reduce plaintiff's compensation by expensing monies, which defendant received from Centegra Health Systems, directly to her. Plaintiff also learned that defendant was not a licensed professional corporation, even though it had given plaintiff prior assurances that it was properly registered. According to plaintiff, to induce her to join its medical practice, defendant expressly represented in writing

that the "Corporation [was] registered to practice medicine in the State of Illinois." Based on this and other oral and written representations made by defendant to plaintiff, plaintiff entered into an employment agreement with defendant on September 22, 2000. She commenced working for defendant's practice on October 23, 2000.

Plaintiff resigned from defendant's employ on December 20, 2002. On that same date, she filed this suit against defendant, based on various breaches and misrepresentations allegedly made by defendant. Relevant to this appeal is count I of plaintiff's complaint, in which she sought a declaratory judgment that the employment agreement was void *ab initio* because defendant failed to register for a certificate with the IDPR, pursuant to the Act, to practice as a professional corporation. Defendant counterclaimed to enforce the agreement.

The facts pertaining to defendant's lack of a certificate of registration from the IDPR are undisputed. Defendant was originally formed as a professional corporation in July 1999. At that time, defendant's legal counsel requested that the IDPR issue a certificate of registration for the corporation. Although defendant did not realize it at the time, the IDPR followed up on defendant's application by requesting that some minor, technical changes be made in the application. However, defendant never received the letter from the IDPR with respect to those defects because IDPR sent the letter to the wrong address. Around November 2002, the IDPR again sent a letter to defendant to the wrong address. This time, however, the letter was forwarded to defendant's office. In that notice, dated November 12, 2002, the IDPR explained that defendant's application for a certificate of registration had expired and, therefore, was denied. Defendant later determined that its original application for registration was defective because the IDPR required that a suite number be added to the address and that the statement of purpose for the corporation be modified to remove the phrase "rendering the profession of obstetrics and gynecology."

As soon as defendant discovered the circumstances relating to its original application, it promptly proceeded to file a new application and pay the necessary $50 fee for registering with the IDPR. Ultimately, a certificate of registration was issued to defendant by the IDPR, effective January 14, 2003, after the suit was filed. The IDPR has not fined defendant, conducted any investigation, or otherwise taken any action, except to issue the new certificate of registration to defendant as a result of the inadvertent expiration of defendant's initial application. At all times, every physician-employee of defendant has been duly licensed by the IDPR to practice medicine in the State of Illinois.

On May 16, 2003, plaintiff filed three motions to dismiss defendant's counterclaim. She also filed a motion for summary judgment with respect to her claim for declaratory relief in count I of her complaint. Among the contentions asserted by plaintiff in support of her motions was that defendant's failure to possess a certificate of registration from the IDPR, contrary to the requirements of the Act, precluded defendant, as a matter of law, from enforcing the covenant against her.

On September 26, 2003, the trial court entered an order granting plaintiff's motion for summary judgment as to count I of her complaint and dismissing defendant's counterclaim seeking to enforce the agreement. The trial court held that the Act was intended to be regulatory for the protection of the health, safety, and welfare of the public. The court further found that defendant had explicitly represented to plaintiff that it was properly registered by the State to practice as a professional corporation, when this representation was not true. As a consequence of defendant's failure to adhere to the Act, the trial court declared the agreement void *ab initio*. However, finding that there were substantial grounds for differences of opinion and that immediate appeal would materially advance the litigation, the court certified the questions for interlocutory appeal.

## ANALYSIS

■ This court's examination in an interlocutory appeal is strictly limited to the questions certified by the trial court and, as with all questions of law, is a *de novo* review. *In re Consolidated Objections to Tax Levies of School District No. 205*, 306 Ill. App. 3d 1104, 1107 (1999), citing *Lanxon v. Magnus*, 296 Ill. App. 3d 377, 379 (1998).

■ The first question we are called upon to answer is whether the Act's licensing requirements for medical corporations is intended to protect the public's health, safety, or welfare. We must begin our analysis by looking at the language of the relevant sections of the Act. The language of a statute is often the most reliable evidence of the legislature's intent. *Pullen v. Mulligan*, 138 Ill. 2d 21, 46 (1990). Here, the legislature specifically has included in the Act a section regarding its intent. It states:

> "It is the legislative intent to provide for the incorporation of an individual or group of individuals to render the same professional service or related professional services to the public for which such individuals are required by law to be licensed or to obtain other legal authorization, while preserving the established professional aspects of the personal relationship between the professional person and those he serves professionally." 805 ILCS 10/2 (West 2002).

The trial court found that the Act was intended for the protection

of the public. We find nothing in this section or in any other section of the Act that leads to this conclusion. It is clear, based on a reading of the entire Act, that the function of the Act is primarily permissive, allowing professionals, who would otherwise not be entitled to enjoy the benefits of incorporating, to establish corporate entities for their professional practices.

We find nothing in the Act that signifies that it was enacted for the protection of the public. Section 12 requires a corporation to pay an annual fee to renew its registration, but there are no civil or criminal penalties for noncompliance. 805 ILCS 10/12 (West 2002). "Such criminal or civil penalties would indicate that the licensing requirements were enacted because they have a significant impact on public health or safety." *Joseph P. Storto, P.C. v. Becker*, 341 Ill. App. 3d 337, 344 (2003). The Act assigns only minor, administrative functions to the IDPR, whose tasks are more ministerial than regulatory. See, *e.g.*, 805 ILCS 10/8 (West 2002). The only enforcement authority provided to the IDPR under the Act is the ability to suspend or revoke a certificate of registration (805 ILCS 10/13 (West 2002)), or to collect an additional $100 fee when a registrant's certificate lapses and it continues to practice without a certificate (805 ILCS 10/12.1 (West 2002)).

It is generally recognized that professional service corporation legislation, similar to the Act, arose "out of the desire of professional groups to realize the tax benefits open to employees under the qualified pension, profit-sharing, and annuity plan provisions of the Internal Revenue Code." J. Rydstrom, *Practice by Attorneys and Physicians as Corporate Entities or Associations Under Professional Service Corporation Statutes*, 4 A.L.R. 3d 383, 385 (1965); see also 18 Am. Jur. 2d *Corporations* § 37 (2003). In addition to providing certain tax breaks, incorporation under the Act reduces potential civil liability. See 805 ILCS 10/8 (West 2002). Clearly, the intent of the legislature here is not to advance the public welfare but to allow professionals to incorporate in order to enjoy certain tax benefits and to reduce their potential civil liability.

Plaintiff argues that, upon an application for registration under section 12, the IDPR must investigate the corporation, and no certificate will issue if the incorporators, officers, directors, and shareholders are not *licensed* under Illinois law to engage in their particular profession. Plaintiff asserts that this licensing requirement signifies the legislature's intent to protect the health, safety, or welfare of the public. We agree that licensing statutes like the Medical Practice Act of 1987 (225 ILCS 60/1 *et seq.* (West 2002)) are designed to protect the health, safety, or welfare of the public. We believe that the Act's

requirement that the incorporators, officers, directors, and shareholders be licensed to practice in their profession merely ensures that those individuals who intend to incorporate under the Act are organized solely for the purpose of rendering one category of a professional service. 805 ILCS 10/3.4 (West 2002). Professional service corporations differ from ordinary business corporations in that only licensed professionals can be members or shareholders. While its individual members are subject to supervision by the IDPR under different regulations, we find nothing in the Act that otherwise benefits the public's health, safety, or welfare.

Furthermore, statutes that have been interpreted as necessary for the public safety are those that have been enacted to provide assurance of adequately trained professionals, such as those statutes requiring licenses for doctors or lawyers. See, *e.g.*, *Tovar v. Paxton Community Memorial Hospital*, 29 Ill. App. 3d 218, 220 (1975). Indeed, the Act does not include any of the indicia of such regulatory intent, including examinations for competency. Our supreme court in *People v. Brigham*, 151 Ill. 2d 58 (1992), determined that a lawyer's failure to pay his registration fee did not prevent him from providing competent legal advice. *Brigham*, 151 Ill. 2d at 70-71. Similarly, we do not believe that a medical corporation's failure to pay its corporate registration fees would undermine the public's trust that its licensed doctors can practice medicine competently. See *Brigham*, 151 Ill. 2d at 70-71; *Storto*, 341 Ill. App. 3d at 344.

Plaintiff appears to equate the lack of a certificate of registration under the Act to practice as a professional corporation with the lack of a license to practice medicine. Clearly, there is a difference. As stated above, those statutes requiring licenses to practice a profession are necessary for the public safety because they have been enacted to provide assurance of adequately trained professionals. A violation of the Act does not necessarily mean that the doctors lack the requisite medical skills to practice medicine. In all of the licensing cases cited by plaintiff, the statutes clearly were enacted for the protection of the public. See, *e.g.*, *Tovar*, 29 Ill. App. 3d at 220 (the purpose of the Medical Practice Act is to "protect the public by assuring them of adequately trained physicians"); *Kaplan v. Tabb Associates, Inc.*, 276 Ill. App. 3d 320, 323 (1995) (Illinois Architecture Practice Act of 1989 (225 ILCS 305/21 (West 1992)) expressly declared that the practice of architecture affects the public health, safety, and welfare); *Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.*, 261 Ill. App. 3d 338, 346 (1994) (Private Employment Agency Act (225 ILCS 515/1 *et seq.* (West 1992)) was "designed to correct and prevent abusive practices by employment agencies"); *Management Recruiters of O'Hare, Inc. v.*

*Process & Environmental Equipment Unlimited, Inc.*, 137 Ill. App. 3d 513, 521 (1985) (the purpose of the Private Employment Agencies Act (Ill. Rev. Stat. 1983, ch. 11, par. 901 *et seq.*) "like that in *Tovar*, appears to be primarily the protection of the public"); *Rabin v. Prenzler*, 116 Ill. App. 3d 523, 529 (1983) (Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1977, ch. 111, par. 5701 *et seq.*) is remedial). Accordingly, we find plaintiff's reliance on the licensing cases to be inapposite.

We find that the analysis set forth in *Storto*, 341 Ill. App. 3d 337, supports our decision. In that case, a client of a professional firm of lawyers attempted to avoid its contractual obligations by arguing that the firm was not properly registered with the Illinois Supreme Court pursuant to Rule 721 (166 Ill. 2d R. 721). We concluded that the registration requirements of Rule 721, which did not impose civil or criminal liability for the failure to register, were not enacted for the protection of the public safety. *Storto*, 341 Ill. App. 3d at 344. We observed that a law firm "generally does not incorporate to benefit its clients or to advance the public welfare. [Citation.] Rather, a law firm incorporates to enjoy certain tax benefits and to reduce its potential civil liability." *Storto*, 341 Ill. App. 3d at 344.

The only case in Illinois addressing the effect of the failure of a medical professional corporation to register with the IDPR is the case of *Brockett v. Davis*, 325 Ill. App. 3d 727 (2001). In that case, an alleged tortfeasor argued that, because his victim's doctors did not have a certificate of registration under the Act, he should not be liable for any of those medical bills. The Third District Appellate Court concluded that the tortfeasor, who did not have a contractual relationship with the medical corporation and was not directly affected by the lack of registration, did not have standing to assert the nonregistration as a defense to that element of the damages claim. *Brockett*, 325 Ill. App. 3d at 731. Despite its determination that the defendant lacked standing to raise the issue of whether the bills for services were void because of the corporation's failure to obtain the certificate of registration required by the Act, the court noted that, "unlike the licensing requirement for a doctor under the Medical Practice Act, the certificate of registration required by the Medical Corporation Act does not appear to be designed to protect the public by assuring it of adequately trained physicians." *Brockett*, 325 Ill. App. 3d at 731.

Accordingly, because we find nothing that signifies that the Act was enacted for the benefit of the health, safety, or welfare of the public, we answer the first question in the negative.

■ The second question we are called upon to answer is whether defendant's failure to comply with the Act's certificate of registration

requirement rendered the employment agreement void *ab initio*. The general rule that guides our conclusion was stated in *Ransburg v. Haase*, 224 Ill. App. 3d 681, 684-85 (1992): "[C]ourts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a license where the legislation was enacted for the protection of the public, not as a revenue measure."

Cases involving the unenforceability of contracts in violation of licensing statutes afford guidance here. For example, in *Tovar*, the plaintiff claimed wrongful termination of his employment contract as a physician with the defendant. Both parties knew that the plaintiff was not licensed to practice medicine in Illinois, as required by the Medical Practice Act, which also barred an unlicensed physician from maintaining an action for fees or services. The court noted that the purpose of the statute was to assure the public of adequately trained physicians and that the statute prohibited any agreement designed to induce a breach of the licensing provisions. Although the plaintiff's action was not to recover for services rendered, the court reasoned by analogy that, as the contract of employment was in violation of the statute, the agreement was unenforceable. *Tovar*, 29 Ill. App. 3d at 220.

In *Storto*, the defendant argued that the contract she entered into with the plaintiff was void as a matter of public policy. However, we held that Rule 721(c) was not enacted for the protection of the public safety and, therefore, the contractual obligations owed to a corporation not properly registered under Rule 721(c) could not be voided absent a showing of prejudice resulting from the failure to register. *Storto*, 341 Ill. App. 3d at 342-44. We would not excuse the client from a contractual obligation without a demonstration of how she was harmed by the law firm's failure to register with the supreme court. We noted that, absent prejudice, allowing the client to escape her contractual obligations would be disproportionate to the wrong committed by the law firm. *Storto*, 341 Ill. App. 3d at 343.

Recently, in *Ford Motor Credit Co. v. Sperry*, 344 Ill. App. 3d 1068, 1072 (2003), this court held that an award of attorney fees pursuant to a claim of consumer fraud was void because the attorneys, a professional corporation, had failed to register with the supreme court in violation of Rule 721(c). Unlike *Storto*, however, *Sperry* did not involve an attempt by a party to avoid performing his or her contractual obligations. *Sperry*, 344 Ill. App. 3d at 1071.

We recognize that the plaintiff's action in *Storto* involved recovery for services rendered to a client. However, like the plaintiff in *Storto*, plaintiff here also attempts to be excused from her contractual obliga-

tions due to defendant's failure to register as a corporation. Plaintiff, no doubt, enjoyed certain corporate benefits when she was employed by defendant. As we concluded in *Storto*, absent any prejudice, to excuse plaintiff from her contractual obligations due to defendant's failure to register would be disproportionate to the wrong committed by defendant. See *Storto*, 341 Ill. App. 3d at 343. Plaintiff cannot be excused from a contractual obligation without demonstrating how she was harmed by defendant's failure to register. Therefore, absent prejudice, we hold that the lack of a certificate under the Act did not render the agreement void *ab initio*. See *Brockett*, 325 Ill. App. 3d at 732. Accordingly, we answer the second question in the negative.

Defendant contends that, assuming *arguendo* that the Act was regulatory and designed for the protection of the public health and welfare, the *de minimis* and inadvertent violation of the Act did not warrant undermining the parties' contractual obligations. Defendant asserts that the trial court should have weighed the benefit to the public welfare of declaring a party's contractual rights unenforceable against the detrimental effect of allowing a party to use such a violation to avoid his or her contractual obligations. Defendant asserts that its inadvertent failure to register should not excuse plaintiff from performing under the agreement and that the relevant policy considerations clearly establish that the trial court's punishment did not fit defendant's minor mistake. However, because we find that the Act is not regulatory, we need not address this issue.

Plaintiff further asserts that the supreme court's recent opinion in *Carter-Shields v. Alton Health Institute*, 201 Ill. 2d 441 (2002), which held that a corporation's failure to comply with the licensing requirement rendered the physician's contract void *ab initio*, affirms the importance of strict compliance with public health licensing regulations.

In *Carter-Shields*, the plaintiff, a doctor, entered into an employment agreement with the defendant, a not-for-profit corporation. As a result of numerous disputes, she filed a complaint for declaratory judgment, alleging that her employment agreement with the defendant violated the prohibition against the corporate practice of medicine and, therefore, was illegal and unenforceable. Unlike defendant here, however, the defendant in *Carter-Shields* was not a professional or medical service corporation and, thus, was not expressly sanctioned by the legislature to employ physicians. See *Carter-Shields*, 201 Ill. 2d at 451. Because the defendant was an entity that could not lawfully hire a physician or assign the agreement to an entity that could, the supreme court held that the employment agreement was void and unenforceable from its inception. *Carter-Shields*, 201 Ill. 2d at 460-61.

The supreme court also based its decision upon the public policy concerns of "lay control over professional judgment and the division of a physician's loyalties which underpin the prohibition against the corporate practice of medicine." *Carter-Shields*, 201 Ill. 2d at 461. Those concerns do not apply to a professional corporation such as defendant, which is owned and operated by licensed medical professionals. We agree with defendant that *Carter-Shields* is "miles removed from the situation at issue in the present case."

Plaintiff argues that *Carter-Shields* overruled *Brockett*. We disagree. As stated above, *Carter-Shields* did not involve a professional corporation or the failure of a professional corporation to obtain a certificate of registration under the Act. That decision provides no guidance on the questions presented in this case. The only mention of medical corporations made in *Carter-Shields* was the acknowledgment that such corporations were sanctioned by the legislature to employ physicians and, thus, are not subject to the corporate practice of medicine doctrine. *Carter-Shields*, 201 Ill. 2d at 451.

Certified questions answered.

BOWMAN and KAPALA, JJ., concur.