No. 2--03--1434

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________
______________

MARY T. RIGGS, ) Appeal from the Circuit

) Court of McHenry County.

Plaintiff and Counter- )

defendant-Appellee, )

)

v. ) No. 02--MR--266

)

WOMAN TO WOMAN, OBSTETRICS )

AND GYNECOLOGY, P.C.,
 )

     ) Honorable

Defendant and Counter- ) Maureen P. McIntyre,

plaintiff-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered 
the
 opinion of 
the
 court:

This matter comes before the court as an interlocutory appeal brought pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308).  Plaintiff, Dr. Mary T. Riggs, filed the underlying action seeking, 
inter
 
alia
, a declaration that she was not required to abide by 
a
 contractual obligation, including a covenant not to compete, contained in her physician agreement with 
defendant
, Woman to Woman Obstetrics and Gynecology, P.C.  Plaintiff claimed that defendant
's failure to register as a professional corporation with 
the
 Illinois Department of Professional Regulation (IDPR) pursuant to section 12 of 
the
 Professional Service Corporation Act (the Act) (805 ILCS 10/12 (West 2002)) 
rendered 
the
 agreement void 
ab
 
initio
.  Defendant counterclaimed, seeking enforcement of 
plaintiff
's covenant.  The trial court granted 
plaintiff
's motion for summary judgment on count I of her complaint and dismissed 
defendant
's counterclaim.  The court found
: (1) as a matter of law,
 
the
 Act 
was intended to be regulatory for 
the
 protection of 
the
 public health and safety in 
the
 practice of medicine; 
(2) defendant
 explicitly represented, untruthfully, that it was licensed as a professional corporation under 
the
 Act; and (3) as a result, 
defendant
 was not authorized to engage in 
the
 practice of medicine under 
the
 Act.  Accordingly, 
the
 
court held that 
the
 agreement between 
the
 parties was void 
ab
 
initio
.  
Finding that there was substantial ground for difference of opinion regarding 
its
 legal conclusion 
and that an immediate appeal could materially advance 
the
 ultimate termination of 
the
 litigation
, the trial court granted 
plaintiff
's motion for certification pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308)
.  T
he
 trial court certified 
the
 following questions for our review:

"(1) Whether 
the
 Act's licensing requirements for medical corporations is intended to protect 
the
 public's health, safety, or welfare[.]

(2) Whether 
defendant
's failure to comply with 
the
 Act's certificate of registration requirement rendered 
the
 employment agreement 
void 
ab
 
initio
[.]
"

We answer both in 
the
 negative.

BACKGROUND

Plaintiff filed 
the
 instant lawsuit 
after she discovered that 
defendant
 allegedly had engaged in a fraudulent accounting scheme designed to reduce 
plaintiff
's compensation by expensing monies, which defendant
 received from Centegra Health Systems, directly to her.  P
laintiff
 also learned that 
defendant
 was not a licensed professional corporation, even though it had given plaintiff prior assurances that 
it
 was properly registered.  According to 
plaintiff
, to induce 
her
 to join its medical practice, 
defendant
 expressly represented in writing that 
the
 "Corporation [was] registered to practice medicine in 
the
 State of Illinois."  B
ased on this and other oral and written representations made by 
defendant
 to 
plaintiff
, 
plaintiff
 entered into 
an employment agreement with 
defendant
 on September 22, 2000.  She
 commenced working for 
defendant
‛s practice on October 23, 2000.

Plaintiff resigned from 
defendant
's employ on December 20, 2002.  On that same date, she filed this suit against 
defendant
, based on 
various breaches and misrepresentations allegedly made by 
defendant
.  Relevant to this appeal is count I of 
plaintiff's complaint, in which she sought a declaratory judgment 
that 
the
 employment agreement was void 
ab
 
initio
 because 
defendant
 failed to register for a certificate with 
the
 IDPR, pursuant to 
the
 Act, to practice as a professional corporation.  Defendant counterclaimed to enforce 
the
 agreement.

The facts pertaining to 
defendant
's lack of a certificate of registration from 
the
 IDPR are undisputed.  Defendant was originally formed as a professional corporation in July 1999.  At that time, 
defendant
's legal counsel requested that 
the
 IDPR issue a certificate of registration for 
the
 corporation.  Although 
defendant
 did not
 realize it at 
the
 time, 
the
 IDPR followed up on 
defendant
's application by requesting that some minor, technical changes be made in 
the
 application.  However, 
defendant
 never received 
the
 letter from 
the
 IDPR with respect to those defects because 
IDPR sent 
the
 letter to 
the
 wrong address.  Around November 2002, 
the
 IDPR again sent a letter to 
defendant
 to 
the
 wrong address.  
This time, however, 
the
 letter was forwarded to 
defendant
's office.  In that notice, dated November 12, 2002, 
the
 IDPR explained that 
defendant
's application for a certificate of registration had expired and, therefore, was denied.  Defendant later determined that its original application for registration was defective because 
the
 IDPR required 
that a
 suite number be added to 
the
 address and that 
the
 statement of purpose for 
the
 corporation be modified to remove 
the
 phrase "rendering 
the
 profession of obstetrics and gynecology."

As soon as 
defendant
 discovered 
the
 circumstances relating to its original application, it promptly proceeded to file a new application and pay 
the
 necessary $50 fee for registering with 
the
 IDPR.  Ultimately, a certificate of registration was issued to 
defendant
 by 
the
 IDPR, effective January 14, 2003, after 
the
 suit was filed.  The IDPR has not fined 
defendant
, conducted any investigation, or otherwise taken any action, except to issue 
the
 new certificate of registration to 
defendant
 as a result of 
the
 inadvertent expiration of 
defendant
's initial application.  At all times, every physician-employee of 
defendant
 has been duly licensed by 
the
 IDPR
 to practice medicine in the State of
 Illinois.

On May 16, 2003, 
plaintiff
 filed three motions to dismiss 
defendant
's counterclaim.  She also filed a motion for summary judgment with respect to her claim for declaratory relief in count I of her complaint.  Among 
the
 contentions asserted by 
plaintiff
 in support of her motions was that 
defendant
's failure to possess a certificate of registration from 
the
 IDPR, contrary to 
the
 requirements of 
the
 Act, precluded 
defendant
, as a matter of law, from enforcing 
the
 covenant against her.

On September 26, 2003, 
the
 trial court entered an order granting 
plaintiff
's motion for summary judgment as to count I of her complaint and dismissing 
defendant
's counterclaim seeking to enforce 
the
 agreement.  The trial court held that 
the
 Act was intended to be regulatory for 
the
 protection of 
the
 health, safety, and welfare of 
the
 public.  
The court further found that 
defendant
 had explicitly represented to 
plaintiff
 that 
it 
was properly registered by 
the
 State to practice as a professional corporation, when this representation was not true.  As a consequence of 
defendant
's failure to adhere to 
the
 Act
, 
the
 trial court declared 
the
 agreement void 
ab
 
initio
.  
However, finding that there were substantial grounds for differences of opinion and that immediate appeal would materially advance the litigation, the court certified the questions for interlocutory appeal.

ANALYSIS 

This court's examination in an interlocutory appeal is strictly limited to the questions certified by the trial court and, as with all questions of law, is a 
de
 
novo
 review.  
In re Consolidated Objections to Tax Levies of School District No. 205
, 306 Ill. App. 3d 1104, 1107 (1999), citing 
Lanxon v. Magnus
, 296 Ill. App. 3d 377, 379 (1998). 

The first question we are called upon to answer is whether 
the
 Act's licensing requirements for medical corporations is intended to protect 
the
 public's health, safety, or welfare.  We must
 begin our analysis 
by looking at the language of the relevant sections of 
the
 Act.  The language of a statute is often 
the
 most reliable evidence of 
the
 legislature's intent.  
Pullen v. Mulligan
, 138 
Ill. 2d
 21, 46 (1990).  
Here, 
the
 legislature specifically has included in 
the
 Act
 a section 
regarding its intent.  It states:

"It is 
the
 legislative intent to provide for 
the
 incorporation of an individual or group of individuals to render 
the
 same professional service or related professional services to 
the
 public for which such individuals are required by law to be licensed or to obtain other legal authorization, while preserving 
the
 established professional aspects of 
the
 personal relationship between 
the
 professional person and those he serves professionally."  805 ILCS 10/2 (West 2002).

The trial court found that 
the
 Act was intended for 
the
 protection of 
the
 public.  We find nothing in 
this section or 
in any other section of 
the
 Act that leads to this conclusion. 
 It is clear, based on a reading of 
the
 entire Act, that the function of 
the
 Act is primarily permissive, allowing professionals, who would otherwise not be entitled to enjoy 
the
 benefits of incorporating, to establish corporate entities for their professional practices.

We find nothing in 
the
 Act that signifies that it was enacted for 
the
 protection of 
the
 public.  Section 12 requires a corporation to pay an annual fee
 to renew its registration, but there are no civil or criminal penalties for noncompliance.  805 ILCS 10/12 (West 2002).  "Such criminal or civil penalties would indicate that 
the
 licensing requirements were enacted because they have a significant impact on public health or safety."  
Joseph P. Storto, P.C. v. Becker
, 341 
Ill. App. 3d
 337, 344 (2003)
. 
 T
he Act assigns only minor, administrative functions to 
the
 IDPR, whose tasks are more ministerial than regulatory.  See, 
e.g.
, 
805 ILCS 10/8 (West 2002)
.  
The only enforcement authority provided to 
the
 IDPR under 
the
 Act is the ability to suspend or revoke a certificate of registration (805 ILCS 10/13 (West 2002)
), or to collect an additional $100 fee when a registrant's certificate lapses and it continues to practice without a certificate (805 ILCS 10/12.1 (West 2002)).

It is generally recognized that professional service corporation legislation, 
similar to 
the
 Act, arose "out of 
the
 desire of professional groups to realize 
the
 tax benefits open to employees under 
the
 qualified pension, profit-sharing, and annuity plan provisions of 
the
 Internal Revenue Code."  J. Rydstrom, 
Practice by Attorneys & Physicians as Corporate Entities or Associations Under Professional Service Corporation Statutes,
 4 A.L.R. 3d 383, 385 (1965)
; see also 18 Am. Jur. 2d, 
Corporations
 §37 (2003).  In addition to providing certain tax breaks, incorporation under 
the
 Act reduces potential civil liability. 
 See 805 ILCS 10/8 (West 2002).  C
learly, 
the
 intent of 
the
 legislature here is
 not to advance 
the
 public welfare but to allow professionals to incorporate in order to enjoy certain tax benefits and to reduce their potential civil liability.

Plaintiff argues that, 
upon an application
 for registration
 under section 12
, the
 IDPR 
must investigate 
the
 corporation, and 
no certificate will issue if 
the
 incorporators, officers, directors, and shareholders are not 
licensed
 under
 Illinois law to engage in 
their
 particular profession.  Plaintiff asserts that this licensing requirement signifies 
the
 legislature's intent to protect 
the
 health, safety, or welfare of 
the
 public.  We agree that 
licensing statutes like 
the
 Medical Practice Act of 1987 (225 ILCS 60/1 
et
 
seq
. (West 2002)) 
are designed to protect 
the
 health, safety, or welfare of 
the
 public. 
 W
e believe that the
 Act's requirement that 
the
 incorporators, officers, directors, and shareholders are licensed to practice in their profession merely 
ensures that 
those individuals who intend to incorporate
 under 
the
 Act are organized solely for 
the
 purpose of rendering one category of a professional service
.  805 ILCS 10/3.4 (West 2002).  Professional service corporations differ from ordinary business corporations in that only licensed professionals can be members or shareholders.  While its individual members are subject to 
supervision by 
the
 IDPR under different regulations, we 
find nothing in 
the
 Act that otherwise 
benefits 
the
 public's health, safety, or welfare.

Furthermore, statutes that have been interpreted as necessary for 
the
 public safety are those that have been enacted to provide assurance of adequately trained professionals, 
such as those 
statutes requiring licenses for doctors or lawyers.  
See, 
e.g.
, 
Tovar v. Paxton Community Memorial Hospital
, 29 
Ill. App. 3d
 218, 220 (1975). 
 Indeed, 
the
 Act does not include any of 
the
 indicia of such regulatory intent, including examinations for competency.  Our supreme court in 
People v. Brigham
, 151 
Ill. 2d
 58 (1992), determined that a lawyer's failure to pay his registration fee did not prevent him from providing competent legal advice.  
Brigham
, 151 
Ill. 2d
 at 70-71.  Similarly, we do not believe that a medical corporation's failure to pay its corporate registration fees would undermine 
the
 public's trust that its licensed doctors can practice medicine competently.  See 
Brigham
, 151 
Ill. 2d
 at 70-71; 
Storto
, 341 
Ill. App. 3d
 at 344.

Plaintiff appears to equate 
the
 lack of a certificate of registration under 
the
 Act to practice as a professional corporation with 
the
 lack of a license to practice medicine.
  Clearly, there is a difference.  
As stated above, those statutes requiring licenses to practice a profession are necessary for 
the
 public safety because they have been enacted to provide assurance of adequately trained professionals.  A violation of 
the
 Act does not necessarily mean that 
the
 doctors lack 
the
 requisite medical skills to practice medicine.  
In all of 
the
 licensing cases cited by 
plaintiff
, 
the
 statutes clearly were enacted for 
the
 protection of 
the
 public.  See, 
e.g.
, 
Tovar
, 29 
Ill. App. 3d
 at 220 (the purpose of 
the
 Medical Practice Act is to "protect 
the
 public by assuring them of adequately trained physicians"); 
Kaplan v. Tabb Associates, Inc.
, 276 
Ill. App. 3d
 320, 323 (1995) (Illinois Architecture Practice Act of 1989 (225 ILCS 305/21 (West 1992)) expressly declared that 
the
 practice of architecture affects 
the
 public health, safety, and welfare); 
Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.
, 261 
Ill. App. 3d
 338, 346 (1994) (Private Employment Agency Act (225 ILCS 515/1 
et seq.
 (West 1992)) was "designed to correct and prevent abusive practices by employment agencies"); 
Management Recruiters of O'Hare, Inc. v. Process & Environmental Equipment Unlimited, Inc.
, 137 
Ill. App. 3d
 513, 521 (1985) (the purpose of 
the
 Private Employment Agencies Act (Ill. Rev. Stat. 1983, ch. 11, par. 901 
et seq.
) "like that in 
Tovar
, appears to be primarily 
the
 protection of 
the
 public"); 
Rabin v. Prenzler
, 116 
Ill. App. 3d
 523, 529 (1983) (Real Estate Brokers and Salesmen License Act (Ill. Rev. Stat. 1977, ch. 111, par. 5701 
et seq.
) is remedial). 
 Accordingly,
 
we find plaintiff
's reliance on 
the
 licensing cases to be inapposite.

We 
find that the
 analysis set forth in 
Storto
, 341 
Ill. App. 3d
 337, supports our decision.  In that case, a client of a professional firm of lawyers attempted to avoid its contractual obligations by arguing that 
the
 firm was not properly registered with 
the
 Illinois Supreme Court pursuant to Rule 721 (166 Ill. 2d R. 721).  We concluded that 
the
 registration requirements of Rule 721, which did not impose civil or criminal liability for 
the
 failure to register, were not enacted for 
the
 protection of 
the
 public safety.  
Storto
, 341 
Ill. App. 3d 
at 344.  We observed that a law firm "generally does not incorporate to benefit its clients or to advance 
the
 public welfare.  [Citation.] 
 Rather, a law firm incorporates to enjoy certain tax benefits and to reduce its potential civil liability."  
Storto
, 341 
Ill. App. 3d 
at 344.

The only case in Illinois addressing 
the
 effect of 
the
 failure of a medical professional corporation to register with 
the
 IDPR is 
the
 case of 
Brockett v. Davis
, 325 
Ill. App. 3d
 727 (2001).  In that case, 
an alleged tortfeasor argued that, because his victim's doctors did not have a certificate of registration under 
the
 Act, he should not be liable for any of those medical bills. 
 The
 Third District Appellate Court 
concluded that 
the
 tortfeasor
, who did not have a contractual relationship with 
the
 medical corporation and was not directly affected by 
the
 lack of registration, did not have standing to assert 
the
 nonregistration as a defense to that element of 
the
 damages claim.
  
Brockett
, 325 
Ill. App. 3d
 at 731.  Despite its determination that 
the
 
defendant
 lacked standing to raise 
the
 issue of whether 
the
 bills for services were void because of 
the
 corporation's failure to obtain 
the
 certificate of registration required by 
the
 Act, 
t
he court noted that, "unlike 
the
 licensing requirement for a doctor under 
the
 Medical Practice Act, 
the
 certificate of registration required by 
the
 Medical Corporation Act does not appear to be designed to protect 
the
 public by assuring it of adequately trained physicians."  
Brockett
, 325 
Ill. App. 3d
 at 731.

Accordingly, because we find nothing 
that signifies 
that the
 Act was enacted for 
the
 benefit of 
the
 health, safety, or welfare of 
the
 public, we answer 
the
 first question in 
the
 negative.

The second question we are called upon to answer is whether 
defendant
's failure to comply with 
the
 Act's certificate of registration requirement rendered 
the
 employment agreement 
void 
ab
 
initio
. 
 
The general rule that guides our conclusion was stated in 
Ransburg v. Haase
, 224 
Ill. App. 3d
 681, 684-85 (1992)
: "[C]ourts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a license where the legislation was enacted for the protection of the public, not as a revenue measure".

Cases involving 
the
 unenforceability of contracts in violation of licensing statutes afford guidance here.
  For example, in 
Tovar
, 
the
 
plaintiff
 claimed wrongful termination of his employment contract as a physician with 
the
 
defendant
.  Both parties knew that 
the
 
plaintiff
 was not licensed to practice medicine in Illinois, as required by 
the
 Medical Practice Act, which also barred an unlicensed physician from maintaining an action for fees or services.  The court noted that 
the
 purpose of 
the
 statute was to assure 
the
 public of adequately trained physicians and that 
the
 statute prohibited any agreement designed to induce a breach of 
the
 licensing provisions.  Although 
the
 
plaintiff
's action was not to recover for services rendered, 
the
 court reasoned by analogy that, as 
the
 contract of employment was in violation of 
the
 statute, 
the
 agreement was unenforceable.  
Tovar
, 29 
Ill. App. 3d
 at 220.

In 
Storto
, the 
defendant
 
argued that 
the
 contract she entered into with 
the
 
plaintiff
 was void as a matter of public policy.  H
owever, we held that Rule 721(c) was not enacted for 
the
 protection of 
the
 public safety and, therefore, 
the
 contractual obligations owed to a corporation not properly registered under Rule 721(c) could not be voided absent a showing of prejudice resulting from 
the
 failure to register.  
Storto
, 341 
Ill. App. 3d
 at 342-44.  We would not excuse 
the
 client from a contractual obligation without a demonstration of how she was harmed by 
the
 law firm's failure to register with 
the
 supreme court.  We noted that, absent prejudice, allowing 
the
 client to escape her contractual obligations would be disproportionate to 
the
 wrong committed by 
the
 law firm
.  
Storto
, 341 
Ill. App. 3d
 at 343.
 

Recently, in 
Ford Motor Credit Co. v. Sperry
, 344 
Ill. App. 3d
 1068, 1072 (2003), this court held that an award of attorney fees pursuant to a claim of consumer fraud was void because 
the
 attorneys, a professional corporation, had failed to register with 
the
 supreme court in violation of Rule 721(c).  Unlike 
Storto
, however, 
Sperry
 did not involve an attempt by a party to avoid performing his or her contractual obligations.  
Sperry
, 344 
Ill. App. 3d
 at 1071.

We recognize that 
the
 
plaintiff
's action in 
Storto
 involved recovery for services rendered to a client.  However, like 
the
 
plaintiff
 in 
Storto
, 
plaintiff
 here also attempts to be excused from her contractual obligations due to 
defendant
's failure to register as a corporation
.  Plaintiff, no doubt, enjoyed certain corporate benefits 
when she was employed by 
defendant
.
  As we concluded in 
Storto
, 
absent any prejudice, to excuse 
plaintiff
 from her contractual obligations due to 
defendant
's failure to register would be disproportionate to 
the
 wrong committed by 
defendant
.  See 
Storto
, 341 
Ill. App. 3d
 at 343.
  Plaintiff cannot be excused from a contractual obligation without demonstrating how she was harmed by 
defendant
's failure to register.  
Therefore, absent prejudice, we hold that 
the
 lack of a certificate under 
the
 Act did not render 
the
 agreement void 
ab
 
initio
.  See 
Brockett
, 325 
Ill. App. 3d
 at 732.  Accordingly, we answer the second question in the negative.

Defendant contends that, assuming 
arguendo
 that 
the
 Act was regulatory and designed for 
the
 protection of 
the
 public health and welfare, the
 
de
 
minimis
 and inadvertent violation of 
the
 Act 
did not warrant undermining 
the
 parties' contractual obligations.  Defendant asserts that 
the
 
trial court should have weighed 
the
 
benefit to 
the
 public welfare of declaring a party's contractual rights unenforceable against 
the
 detrimental effect of allowing a party to use such a violation to avoid his or her contractual obligations.  Defendant asserts that its inadvertent failure to register should not excuse 
plaintiff
 from performing under 
the
 agreement and that 
the
 relevant policy considerations clearly establish that 
the
 trial court's punishment did not fit 
defendant
's minor mistake.
  However, because we find that 
the
 Act is not regulatory, we need not address this issue.

Plaintiff further asserts that 
the
 supreme court's recent opinion in 
Carter-Shields v. Alton Health Institute
, 201 
Ill. 2d
 441 (2002)
, 
which held that a corporation's failure to comply with 
the
 licensing requirement rendered 
the
 physician's contract void 
ab
 
initio,
 affirms 
the
 importance of strict compliance with public health licensing regulations.

I
n 
Carter-Shields
, the 
plaintiff
, a doctor, entered into an employment agreement with 
the
 
defendant
, a not-for-profit corporation.  As a result of numerous disputes, she filed a complaint for declaratory judgment, alleging that her employment agreement with 
the
 
defendant
 violated 
the
 prohibition against 
the
 corporate practice of medicine and, therefore, was illegal and unenforceable.  Unlike 
defendant
 here, however, 
the
 
defendant
 in 
Carter-Shields
 was not a professional or medical service corporation and, thus, was not expressly sanctioned by 
the
 legislature to employ physicians.  See 
Carter-Shields
, 201 
Ill. 2d
 at 451.  
Because 
the
 
defendant
 was an entity that could not lawfully hire a physician or assign 
the
 agreement to an entity that could, 
the
 supreme court held that 
the
 employment agreement was void and unenforceable from its inception. 
 
Carter-Shields
, 201 
Ill. 2d
 at 460-61.

The supreme court also based its decision upon 
the
 public policy concerns of "lay control over professional judgment and 
the
 division of a physician's loyalties which underpin 
the
 prohibition against 
the
 corporate practice of medicine"
.  
Carter-Shields
, 201 
Ill. 2d
 at 461.
  
Those concerns do not apply to a professional corporation such as 
defendant
, which is owned and operated by licensed medical professionals.  We agree with 
defendant
 that 
Carter-Shields
 is "miles removed from 
the
 situation at issue in 
the
 present case."

Plaintiff argues that 
Carter-Shields
 overruled 
Brockett
.  We disagree.  As stated above, 
Carter-Shields
 did not involve a professional corporation or 
the
 failure of a professional corporation to obtain a certificate of registration under 
the
 Act.  That decision provides no guidance on 
the
 questions presented in this case.  The only mention of medical corporations made in 
Carter-Shields
 was 
the
 acknowledgment that such corporations were sanctioned by 
the
 legislature to employ physicians and, thus, are not subject to 
the
 corporate practice of medicine doctrine.
  
Carter-Shields
, 201 
Ill. 2d
 at 451.

Certified questions answered.

BOWMAN and KAPALA, JJ., concur.